(No. 26102.—)
WALTER MAHON *et al.* Appellees, *vs.* S. L. NUDELMAN, Director of Finance, *et al.* Appellants.

*Opinion filed September 15, 1941.*

332

FARTHING, J., dissenting.

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLETT, JR., of counsel,) for appellants.

EDGAR A. JONAS & FREDERICK C. JONAS, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs, appellees, by their complaint in the superior court of Cook county, sought to enjoin appellants, the Director of Finance and others, from collecting or attempting to collect a tax measured by the sales of certain materials used in repairing, remodeling or restyling fur coats and other fur pieces. The complaint sets out that the Department of Finance had adopted a rule, known as rule No. 53, relating to furriers, upon which the tax sought to be enjoined is based. The court granted the injunction and defendants appeal.

The facts as stipulated are as follows: Plaintiffs conduct a business of selling fur coats, as to which business no question is here raised. They also conduct a separate department for repairing and restyling fur garments for a fixed sum, which includes the cost of labor and materials plus overhead and profit. In this business they furnish the necessary fur pieces or strips and linings, where needed, to complete the work. The fur pieces used retain their physical characteristics and original form, though cut and shaped to requirements for repair. They have a value as fur after being physically transferred to the garment. An average of fifteen per cent of the repair contract is for materials, twenty-five per cent for labor and the remaining sixty per cent for overhead and profit. In the contracts for repairing fur garments there is no separate designation of prices for materials as distinguished from the cost of labor, overhead and profit. When a customer brings a fur coat to be repaired, the pieces of skin to be used are selected by the plaintiffs without any intervention of the customer who relies upon the skill of the plaintiffs to properly blend the pieces as to coloring and quality.

The defendants, appellants, say here that the court erred in failing to find that plaintiffs' repair business, so far as it used materials of consequential value, comes within the Retailers' Occupation Tax act. Section 1 of that act (Ill. Rev. Stat. 1939, chap. 120, par. 440, p. 2669) defines, among other terms, "sales at retail." Section 2 imposes the tax. These sections have often been set out *in haec verba* in the opinions of this court and need not be repeated here.

So much of rule No. 53 of the Department of Finance as is applicable to this inquiry, is as follows: "Fur and garment repairmen primarily render repair services and incur no tax liability except in cases where garments are remodeled, altered or repaired, in such a manner as to involve the addition or installation of linings, collars, cuffs,

or other materials of substantial value. In such cases the tax must be computed and paid with respect to receipts from such tangible personal property so sold. Charges for labor or time must be clearly indicated on the books and records of the repairman."

Appellants point out that rule No. 53 provides that the seller of "linings, collars, cuffs, or other materials of substantial value," is required to separate charges for labor, time and materials on his books, and claim applicability of the taxing statute only when, in repairing a fur garment, there is added or installed therein materials of substantial value. They say that under the statutory definition of a sale, and plaintiffs' admission by their stipulation that the materials placed in the garment retain their original physical characteristics and form, a sale as defined in the act has taken place and the tax is properly exacted. It should be borne in mind that the tax is an occupation tax upon a class of vendors described in the act and is measured by the gross receipts from their sales. *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600, and cases there cited.

The class of vendors subject to the act must be determined from a construction of the provisions of the act itself. Rules of the Department of Finance, while often helpful, are not binding on the courts in that matter. Section 2 provides: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State," etc. Section 1 defines "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." By its terms the act makes it clear that not all vendors of personal property at retail, for use or consumption and not for resale, are subject to the act. The tax is on the occupation and not on the sale, though sales are utilized as a measure of the tax

to be assessed. Thus the act does not demand a tax where sales involved, though at retail and for use or consumption and not for resale, are a mere incident to the practice of a profession, (*Babcock* v. *Nudelman,* 367 Ill. 626,) or to the performance of personal services requiring skill or artistic ability, (*Burgess Co.* v. *Ames,* 359 Ill. 427; *Adair Printing Co.* v. *Ames,* 364 id. 342; *A. B. C. Electrotype Co.* v. *Ames,* id. 360,) or isolated sales by one not engaged in the retail sales business. *Continental Can Co.* v. *Nudelman,* 376 Ill. 446.

On the other hand, a vendor who is engaged in the business of selling tangible personal property at retail, for the purposes described in the act, is subject to the tax though he renders considerable service in connection with such retail business. In such case the service rendered is deemed an inseparable part of a commercial transaction and incident to it. *Brevoort Hotel Co.* v. *Ames,* 360 Ill. 485; *Swain Nelson & Sons Co.* v. *Department of Finance,* 365 id. 401.

Thus it is seen, that the first question to be determined is whether the business sought to be taxed is selling personal property at retail, in which service is incidental, or selling services in which supplying materials or making retail sales is but incidental. That question cannot be determined solely by the ratio which retail sales bear to the service rendered, or the quantity of personal property sold. (*Franklin County Coal Co.* v. *Ames,* 359 Ill. 178.) Taxing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer. The words of the act are to be given their full meaning and not the narrowest meaning of which they are susceptible. Words having more than one meaning should be given that meaning which comports with the usual and

popular meaning attached to them. *Revzan* v. *Nudelman,* 370 Ill. 180; *Bradley Supply Co.* v. *Ames,* 359 id. 162; *Peoples Gas Light and Coke Co.* v. *Ames,* id. 152.

Certain cases have been cited by both sides to this controversy and each argues in contradiction of the other that the cases support his position. The question, as now presented to us, however, has never been directly passed upon by this court. The earliest of these cases, *Bradley Supply Co.* v. *Ames, supra,* was an action by the Bradley Supply Company and others to enjoin the Director of Finance from enforcing this act against them. The plaintiffs sold plumbing and heating supplies to plumbing and heating contractors, and it was argued that they were not in the business of selling tangible personal property at retail for use or consumption, but that the contractors, in turn, resold it to the property owner on whose premises the fixtures were installed, and that such property owner was the user and consumer of those materials, hence the contractor who sold to him, and not the plaintiffs who sold to the contractor, was the one liable for the tax. That case holds that the plaintiffs were not liable for the tax; that they were not in the business of selling, at retail, tangible personal property for use or consumption and not for resale. In the discussion of the law and facts of that case it was said: "The user or consumer contemplated by the statute is the ultimate user or consumer who will use the heating and plumbing in his house as long as it lasts or until he desires to do away with it." It will be observed that the question directly before the court was not whether the contractor, who sold and installed the fixtures, was liable for the tax, but whether the plaintiff who sold to the contractor, was so liable. It was held that he was not. The contractor was not a party.

The next case cited is *Swain Nelson & Sons Co.* v. *Department of Finance, supra.* The nursery company sought to be freed of the tax assessed against it for the sale of

nursery stock. Relief was sought on the ground that trees and shrubs are not tangible personal property but are real estate, and that the act of severance from the premises of the nursery does not render them such because under the contract the shrubs and trees shall be growing on the buyer's lands before the contracts are deemed performed, and that such transaction does not embrace a sale of personal property. It was held that when trees and shrubs were severed from the soil and planted in the customer's premises, the title to them passed to the customer who was the ultimate user, and that since, under the Revenue act, stocks of nurseries are required to be listed as merchandise, the trees and shrubs furnished by appellant are to be construed as personal property. There was no question in that record that the nursery was engaged in selling trees and shrubs. The service in that case was held incidental. The case is of little assistance in determining the question here—whether plaintiffs are subject to a tax, measured by materials furnished in the repair of fur garments.

The next case cited is *Blome Co.* v. *Ames, Director of Finance,* 365 Ill. 456, in which it was held that building contractors, in furnishing materials used in the execution of building contracts, are subject to the retailers' occupation tax, and that it is contemplated by the statute that all persons engaged in occupations involving the transfer of tangible personal property for use or consumption and not for resale, come within it. In that case the plaintiffs were engaged in general contracting and sub-contracting in which they did excavating, constructing foundations, erecting buildings and making various kinds of repairs, furnishing and installing fixtures and the like. It was there contended that the plaintiffs made no sale and furnished materials only as incidental to the services rendered.

In *Herlihy Mid-Continent Co.* v. *Nudelman, Director, supra,* the plaintiff, a construction contractor, and others, sought relief from the Retailers' Occupation Tax act aris-

ing out of the construction of concrete sewers, tunnels and sewage treatment works for the Sanitary District of Chicago. In that work plaintiffs used sand, gravel, cement and reinforcing steel, which went into the permanent structures. In that case, as the opinion points out, the question before the court had to do only with that part of the decree which held taxable sales of materials that were incorporated in the projects themselves. This court found that plaintiff was a user of materials such as sand, gravel, cement and steel, which, when mixed, became a part of the structure; that plaintiff did not hold itself out as vendor of such materials; that the Sanitary District did not select or purchase them and that the identity of the materials was destroyed in the construction of the completed structure, which had no commercial value as salvage or otherwise. It was held that the furnishing of such material was not sale within the meaning of the statute and that these contractors were not liable. The *Blome case* was overruled "so far as that case applies to construction contractors who furnish labor and materials in excavating for buildings, sewers, water mains or other purposes, or in the erection of foundations or buildings, or in the making of various kinds of structural repairs to buildings." The opinion in that case, however, distinguished the *Bradley Supply Co. case* on the ground that the materials furnished in that case did not lose their identity. The *Herlihy case* is confined, as the opinion indicates, to the one issue,— whether a contractor who furnishes materials which lose their identity in the structure erected, which also has no salvage value, is subject to the tax. The opinion in that case does not overrule but distinguishes the *Bradley Supply Co. case,* the rationale of which decision, though on a point not directly involved, was to hold contractors who furnished materials liable for the tax. It can hardly be said that the *Herlihy case* is authority for the contention that contractors who furnish materials in building or repairing structures are, in all instances, freed from the tax.

Again in *Revzan* v. *Nudelman, supra,* the question whether the Retailers' Occupation Tax act applied to sales of rubber heels, leather, threads, findings and the like, sold to a shoe repairman, was before the court. This court. held that it could not be logically said that the shoe repairmen consume rubber heels and leather soles, and as to such sales to him the tax was not collectable from his vendor. As pointed out in that case, the court did not have before it the question of the liability or the non-liability of the shoe repairman who furnishes the soles and heels in repairing shoes, and it is observed that even though it be conceded that the shoe repairman did not come within the statute, such fact did not render the one selling those materials to him liable for the tax. It is, of course, clear that as the tax authorized is an occupation tax, the shoe repairman, though he sells tangible personal property for use or consumption and not for resale, is not liable for the tax if such sales are but an incident to his business of repairing shoes.

In *Ahern* v. *Nudelman,* 374 Ill. 237, the plaintiff, an undertaker, sought to be freed from the occupation tax upon the ground that a funeral constitutes a service and, though it includes delivery of such articles as caskets, vaults and graveclothing, the undertaker does not sell such clothing for use or consumption but it is necessarily used in the practice of funeral directing and embalming, and that such service involved professional skill. It was held, however, that in view of the fact that the skill or service does not enhance the value of the casket or graveclothes used, but such articles are sold at a fixed price, which represents a substantial increase over the cost of the materials to him, he disposes of them as a retailer, together with the services rendered which are incidental to the sale rather than the sale incidental to the service.

From this review of the cases it is seen that this court has not passed directly upon the point before us, but from them the rule may be deduced that to render a vocation tax-

able under the act it must appear that the business of the taxpayer is that of selling tangible personal property rather than rendering service. Determination of this factual issue is not always indicated. In the case before us it is admitted that title to the fur pieces and linings used in repairing a garment, is transferred from the plaintiff to his customer, and it is argued that as this is so and as the skins, when put into the repaired garment, do not lose their identity, and have a salvage value, all of which is admitted in the stipulation, plaintiffs' business is selling rather than rendering service. It cannot be said, under the rules adopted in the *Revzan* and *Herlihy cases,* that the fact of a sale of tangible personal property for use or consumption, of itself, brings the seller under the act unless he is engaged in the business of selling, even though the materials furnished retain their identity, and have a salvage value. The fact to be determined is the business of the one sought to be subjected to the tax.

Are plaintiffs, by furnishing pieces of fur and lining for fur coats being repaired, engaged in the business of selling tangible personal property at retail for use or consumption and not for resale, under all the facts of this case?

It is conceded that the plaintiffs are engaged in the fur repair business. It is a matter of general knowledge that a fur garment in need of repair cannot generally be restored to a serviceable condition without the installation of some material, either new or used, and that such repairing requires the skill of the furrier to match the fur as well as to fit linings, etc. In this case it is stipulated that when the customer brings in a garment it is for the purpose of repair, and that the selection, matching and fitting in of fur pieces or lining material used, is left to the choice and skill of plaintiffs. It is evident from this record that the thing sought by the customers of the plaintiffs and furnished by them is the repair of fur garments and fur pieces

brought in by them. The use of materials necessary to the primary purpose of the contract is incidental to it.

This case is to be distinguished from the case of *Warshawsky & Co.* v. *Department of Finance, ante,* p. 165, where the business of the appellant was that of selling new and used automobile parts. Used parts were reconditioned and sold. Appellant issued a catalog about forty per cent of which was for rebuilt parts. The service of rebuilding used parts was for the purpose of putting into condition parts belonging to appellant which he afterwards sold. In that case the business was selling.

Appellants have cited in support of their contention that the business of plaintiffs is taxable, *Sandberg* v. *Iowa State Board of Assessment and Review,* 225 Iowa, 103, 278 N. W. 643. That case can be of no assistance here since the tax provided by the Iowa statute is a sales tax while ours is an occupation tax. Cases cited from other jurisdictions are either controlled by like statutes or on their facts show the taxpayer to be engaged in the business of selling tangible personal property at retail.

We are of the opinion in this case that under the rule of strict construction of taxing statutes, and under the stipulation of facts, the plaintiffs should be held to be engaged in the repair business rather than in the retail sales business so far as the sales of materials are concerned, and that such sales are but an incident to the repair business. This being so, the decree awarding the injunction was correct, and is affirmed.

*Decree affirmed.*

Mr. JUSTICE FARTHING, dissenting: Under the facts stated and section 1 of the Occupation Tax act these were sales of material and furs regardless of the services rendered.