(No. 30174.—<span style="background:black">▮▮▮▮▮▮</span>

FRED B. SNITE, doing business as Elmhurst Country Club, Appellee, *vs.* THE DEPARTMENT OF REVENUE *et al.,* Appellants.

*Opinion filed September 18, 1947.*

GEORGE F. BARRETT, Attorney General, of Springfield, (WILLIAM C. WINES, of Chicago, of counsel,) for appellants.

NEWTON, WILHELM & KENNY, (JOSEPH E. NEWTON and HENRY E. WILHELM, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook County, entered in a *certiorari* proceeding instituted in that court by appellee under the provisions of section 12 of the Retailers' Occupation Tax Act, (Ill. Rev. Stat. 1945, chap. 120, par. 451,) to review a proceeding before the Department of Finance and its successor, the Department of Revenue. (Ill. Rev. Stat. 1945, chap. 127, par. 39b.) The Department had denied appellee's claim for a refund of $3211.43, the same being the amount of all retailers' occupation taxes paid by him from February 24, 1940. Upon review, by *certiorari*, the superior court held that appellee was not engaged in the business of selling

tangible personal property at retail within the meaning contemplated by the Retailers' Occupation Tax Act, quashed the return to the writ and entered judgment in favor of appellee for the amount of the refund claimed by him.

The facts are not disputed. The Elmhurst Country Club is an unincorporated association, composed of members who have no proprietary interest in the assets of the club and who do not share any of the profits or bear any of the losses arising from its maintenance and operation. The club was formerly a corporation. February 24, 1940, appellee purchased from the corporation all its properties, including the club house, grounds and golf course. A contract was entered into between appellee and the corporation, designated as the "old club." An unincorporated association, designated as the "new club" was to be organized and known as the Elmhurst Country Club. This is the club which is now in existence. Appellee agreed to own and maintain "exclusively by himself" a private golf and country club on the former grounds and premises of the old club and to conduct the same in the manner specified in the new club's governing rules and regulations. These rules and regulations were established by agreement between appellee and the old club at the time he acquired the club properties in February, 1924, and since then appellee has operated said properties as the Elmhurst Country Club, furnishing to the members of the club the usual and customary facilities, privileges and conveniences of a country club. He maintains and operates for the use of the club members a golf course, a bar and a restaurant. Each member pays a fee individually when using the golf course and also pays for those articles of food and drink with which he is served at the bar or in the restaurant. Appellee also, in connection with his operation of the club, sells cigars, cigarettes and candies. The privileges of the club house, the golf course, the bar and the restaurant are not available to the general public. Appellee does not

serve or sell to the public generally. He serves the club members and their guests only and sells only to them. The club membership is limited to a total of two hundred and twenty-five, including both charter and regular members. The charter members are those members of the old club in good standing at the time of the change in organization from an incorporated to an unincorporated association. The regular members are those persons elected to membership in the new club, in accordance with the provisions of its governing rules and regulations. These rules and regulations, under which appellee operates the golf course, the bar, the restaurant and all other club facilities, provide: "All profits shall be the exclusive property of Fred B. Snite, his heirs or assigns, and any losses shall, in turn, be sustained by him." They also contain the following statement: "The new Club is established for the purpose of conducting a social organization, fostering of good will among the members and for playing the game of golf and furthering other outdoor sports."

Appellants, the Department of Revenue and its Director, complain that the superior court, in rendering judgment in favor of appellee for the amount of the refund claimed by him, improperly construed the Retailers' Occupation Tax Act. They contend that appellee, in his operation of the bar and restaurant for the purpose of selling food and drink to the Elmhurst Country Club members, is engaged "in the business of selling tangible personal property at retail" within the meaning of the statute imposing a tax upon persons engaged in such business, notwithstanding the fact that his operation of the bar and restaurant is merely incidental to a principal and nontaxable business in which he is engaged.

At all times material to this litigation, the taxing act provided that "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State." (Ill. Rev. Stat. 1945, chap. 120, par. 441.)

It is made clear throughout the various sections of the act and by its title that the tax is an occupation tax, imposed upon persons engaged in the occupation or business of selling tangible personal property at "retail" as the term is defined in the statute. It is not a tax upon sales, although the tax is measured by the gross receipts from such sales. (*Department of Revenue* v. *Jennison-Wright Corp.* 393 Ill. 401; *Mahon* v. *Nudelman,* 377 Ill. 331.) It may, therefore, be regarded as settled that the Retailers' Occupation Tax Act does not impose a tax on the sale nor because of the sale, but imposes an excise tax for the privilege of conducting a retail business.

The record discloses that the food and drink served by appellee at the bar and in the restaurant are tangible personal property sold at retail "for use or consumption and not for resale in any form as tangible personal property," within the meaning of the term "sale at retail" as defined in the act. (*Brevoort Hotel Co.* v. *Ames,* 360 Ill. 485.) From this we cannot conclude, however, that appellee is engaged in a business subject to the tax, since all vendors selling at retail and for use or consumption and not for resale do not fall within the class included by the statute. Thus, a vendor is not taxable where the sale involved is merely incidental to a special service rendered the purchaser. In such case, the occupation of the vendor is that of furnishing service, and he is not engaged in the business of selling, since he does not undertake to sell any articles except those necessary and incidental to the service rendered the purchaser; and this is so regardless of the ratio which retail sales bear to the service rendered or of the quantity of personal property sold. (*Mahon* v. *Nudelman,* 377 Ill. 331; *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600.) The tax authorized being an occupation tax, a vendor selling personal property at retail is not taxable under the act if his business is that of selling service to which the sale at retail is necessary and inci-

dental, (*Mahon v. Nudelman*, 377 Ill. 331,) but is taxable if the services rendered the purchaser, even though considerable, are an inseparable part of the sale and incident to it. *Mahon v. Nudelman*, 377 Ill. 331; *Brevoort Hotel Co. v. Ames*, 360 Ill. 485.

The provisions of the act and the decisions of this court clearly establish the following rules for determining when a vendor is engaged in the business of selling at retail: If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail, and the tax which he pays for the privilege of engaging in such business is measured by the price which the purchaser pays for the article and the service incident thereto. If the service rendered in connection with the article sold does not enhance its value and there is a fixed or ascertainable relation between the value of the article and the value of the service rendered in connection therewith, then the vendor is engaged in the business of selling at retail and also engaged in the business of furnishing service, and is subject to tax as to the one business and tax-exempt as to the other. (*Ahern v. Nudelman*, 374 Ill. 237.) A vendor may be engaged in the business of selling at retail within the meaning of the act and taxable because of such occupation, regardless of whether such selling at retail is carried on as his primary business or as an incident or an aid of his primary business. *Continental Can Co. v. Nudelman*, 376 Ill. 446.

In the case last cited, this court said: "The language quoted from section 2, standing alone, might leave some room for construction of the words 'the business of selling tangible personal property at retail' but when considered with the definition of sales at retail there can not be a doubt that the legislature intended to impose a tax upon every person engaged in the business of selling tangible personal property for use and consumption and not for resale. Many definitions of the words 'occupation' and 'business' are cited in the briefs but they are of little assistance. The meaning intended by the legislature and the scope of the subjects that come within their terms are found in the act itself. The sense in which the words 'occupation' and 'business' are used furnishes no basis to support the contention that they do not include a part of the business carried on as an incident or an aid of the primary business. It is only the isolated or occasional sales made by one who does not hold himself out as engaged in the business of selling this tangible personal property at retail that are expressly exempted by the act itself. The stipulated facts do not bring appellees within this clause for it only applies to the isolated or occasional sales made by one who does not hold himself out as engaging in the business of selling such property at retail, and both elements are lacking in this case. The sales made by appellees were neither isolated nor occasional, and there was an evident holding themselves out, at least to their employees, that they were engaged in the business of furnishing meals." The principle involved in the *Continental Can Co. case* is not unlike that involved in the case at bar, and the above-quoted language used by this court in that case is applicable to the case here.

Appellee cites and principally relies upon our decision in *Svithiod Singing Club* v. *McKibbin*, 381 Ill. 194, to support his claim of nontaxability. That case is not in point.

The situation there is not similar to the situation here, except for the one fact that in each case the sales of food and drink were restricted to members of a social club. In the *Singing Club case* the sales were made by the club itself, and not by an individual. The proceeds of the sales belonged to the club. The tax was assessed against the club. Here, the sales were made not by the club, but by appellee. The proceeds of the sales belonged not to the club or to its members, but to appellee. The tax was assessed not against the club or its members, but against appellee. The profits resulting from the operation of the club belong exclusively to appellee. Any loss from its operation is sustained wholly by him. He, alone, is liable for all obligations and expenses incurred in its operation. In the *Singing Club case* the vendor upon whom the tax was imposed was not permitted by the laws of this State to enter into and transact business for profit. Appellee in this case is under no such restriction. There is nothing whatever in the record before us indicating that profit is not appellee's primary object in operating the Elmhurst Country Club. It does not follow, as appellee seems to suppose, that, because the purpose of the club is social and not commercial, appellee's purpose in operating the club is likewise social and not commercial, and this court will not indulge in such unreasonable presumption.

Our holding in the *Svithiod Singing Club case* was that because the club was organized for and engaged in the promotion of social intercourse and the advancement of cultural arts and could not engage in transactions for profit, it did not become "engaged in business" within the meaning of the act by the selling of food and drink to its members in aid of the purpose for which the club was chartered. The decision turned upon the meaning of the term "business" as used in the act, and the doctrine was established by that case that the business which the act intends shall be included is a commercial business, an indispensable

criterion of which is that profit is intended. We did not hold in that case, as appellee erroneously assumes, that because the furnishing of food and drink to members of a social club is essential to holding the club membership and incidental to the social purposes for which the club was organized, that no vendor engaged in selling food and drink to the members of a social club is included within the act. As we have hereinbefore pointed out, appellee is engaged in the operation of the restaurant and bar as a commercial business, for profit, and is not engaged solely in operating the club for social and recreational purposes or benefits. Our opinion in the *Continental Can Co. case* expressly distinguished between a vendor furnishing food and drink in aid of or as incidental to a commercial business in which he is engaged and a social club furnishing food and drink to its members in aid of the social purposes for which it was organized. Appellee's entire theory of nontaxability is based upon a misconception of our decision in the *Svithiod Singing Club case*.

Appellee argues that the present case is, in principle, similar to and controlled by the *Svithiod Singing Club case*. He states in his brief: *"A nonprofit incorporated social group operated for the amusement of its own members is entitled to no special privileges over a similar group not incorporated. The test is not as to the organizational set-up, but as stated by this Court in the Svithiod case, supra, the test is as to the primary purpose of the Club. If it is a bona fide social club then it is not subject to the tax."* The difficulty with plaintiff's position in this regard is that he has lost sight of the fact that he is not one and the same person, either in law or in fact, as the Elmhurst Country Club. No tax has been imposed upon or assessed against the Elmhurst Country Club, or any of its members, and neither the club nor any of its members are parties to or have any interest in this suit. The Elmhurst Country Club exists as an unincorporated association of not exceed-

ing 225 members. It is a "person" in the legislative sense (Ill. Rev. Stat. 1945, chap. 120, par. 440,) entirely separate and distinct from appellee, notwithstanding the fact that in his claim for refund and throughout these proceedings, appellee has styled himself as "Fred B. Snite, doing business as Elmhurst Country Club."

Under the facts appearing from the record in this case, appellee in his operation of the bar and restaurant for the purpose of selling food and drink to the members of the Elmhurst Country Club and their guests is engaged in a business subject to tax.

The judgment of the superior court is reversed and the cause is remanded, with directions to quash the writ of *certiorari*.

*Reversed and remanded, with directions.*