CONTINENTAL BANK, N.A., of Chicago, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE STATE OF ILLINOIS, Defendant-Appellant (The County of Cook *et al.*, Defendants).

First District (1st Division)    No. 1—95—0942

Opinion filed September 30, 1996.

CAMPBELL, P.J., dissenting.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellants.

David A. Baker, Scott Martin, and Paula D. Hunt, all of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

Every once in a while a court is required to pick through the bones of a statute that has been laid to rest by legislative fiat. This is such a case. The statute is the Illinois Inheritance and Transfer Tax Act (Ill. Rev. Stat. 1959, ch. 120, par. 375 *et seq.*), repealed in 1982 but of consequence in cases where the issue concerns reassessment of a tax already paid.

## BACKGROUND

This is an appeal by the State of Illinois (State) from a judgment

entered on a petition for inheritance tax reassessment brought by the Continental Bank (Continental), as trustee of a residuary trust created by the will of Frederick W. Croll (Croll). The facts are not in dispute.

Croll died on July 15, 1959, leaving an estate valued at $9,789,125.77 to his wife, Florence, and his three sons, Robert, Richard, and John. The distribution of the estate was governed by Croll's will. Among other things, the will provided for the creation of two trusts. Half of the estate was to be placed in a trust for the benefit of Florence (the Marital Trust). The remaining half of the estate (the residuary estate) was to be divided equally into three separate trusts, one for the benefit of each of the three children (collectively referred to as the Residuary Trust). The trusts were to be administered by a corporate trustee (Continental) and two individual trustees. If possible, Florence and one of the sons or two of the sons were to act as the individual trustees.

The Marital Trust is what is at issue in this case. Under the terms of the will, Florence was to receive the income from the corpus of the Marital Trust during her life (life estate). Florence had no power to withdraw the principal. But if the income from the trust was insufficient for Florence's support, maintenance, or medical needs, the corporate trustee had the uncontrolled discretion to distribute, in any year, up to 5% of the corpus of the Marital Trust to Florence.

Florence was given a testamentary power of appointment over the corpus of the trust. This meant that, at her death, Florence could distribute the principal of the trust as appointed in her will. In the event that Florence failed to exercise her right of appointment, the corpus of the trust was to be added to the residuary estate and distributed according to the provisions in Croll's will regarding the Residuary Trust.

The distribution of Croll's estate was subject to taxation in accord with the Illinois Inheritance and Transfer Tax Act (the Act or Inheritance Tax Act). Ill. Rev. Stat. 1959, ch. 120, par. 375 *et seq.* (now repealed, Pub. Act 82—1021, eff. July 1, 1983; 1982 Ill. Laws 2902, 2909). In order to determine the amount of taxes to be paid by Croll's estate, certain assumptions were imposed by law.

Taxes were assessed on the value of the life estate and the remainder in accord with sections 1, 2, and 25 of the Act. Ill. Rev. Stat. 1959, ch. 120, pars. 375, 376, 398. Section 25 provided:

> "When property is transferred or limited in trust or otherwise, and the rights, interest or estates of the transferees, or beneficiaries are dependent upon contingencies or conditions whereby they

may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon the transfer at the rate which would be applicable under the provisions of this Act on the happening of the most probable of the contingencies or conditions \*\*\*. On the happening of any contingency whereby the property, or any part thereof is transferred to a person, corporation or institution exempt from taxation under the provisions of the inheritance tax laws of this State, or to any person, corporation or institution taxable at a rate less than the rate imposed and paid, the person, corporation or institution shall be entitled to a reassessment or redetermination of the tax and to a return by the State Treasurer of so much of the tax imposed and paid as is the difference between the amount paid and the amount which the person, corporation or institution should pay under the inheritance tax laws. \*\*\*

Where an estate for life or for years can be divested by the act or omission of the legatee or devisee it shall be taxed as if there were no possibility of such divesting." Ill. Rev. Stat. 1959, ch. 120, par. 398.

In accord with section 25, taxes were paid by Croll's estate for the transfer of the life estate to Florence and the remainder to the three sons, based on the assumption that the remainder would be distributed to the residuary estate upon Florence's death, without her exercising the right of appointment.

The value of the life estate was determined by multiplying the fair market value of the corpus of the trust by an assumed interest rate of 5%, and then by Florence's life expectancy (based on mortality tables). Ill. Rev. Stat. 1959, ch. 120, par. 376. The value of the remainder was determined by subtracting the value of the life estate from the fair market value of the corpus of the marital trust. Ill. Rev. Stat. 1959, ch. 120, par. 376.

It is clear from the computations that, in valuing the life estate and remainder, it was assumed that Florence would take the income from the trust but no additional distributions of principal. The life estate was valued at $2,625,574.91 and the remainder was valued at $3,102,556.20.

Florence died testate in February 1992. In her will, Florence exercised her power of appointment over the corpus of the trust. She thereby extinguished the remainder interest that had been created by Croll's will. In accord with section 1(4) of the Act, the property over which a power of appointment is exercised is no longer deemed a taxable transfer from the original (Croll's) estate, but instead is treated as if it were the property of the donee's (Florence's) estate. Ill. Rev. Stat. 1959, ch. 120, par. 375(4). Thus, the inheritance taxes

that had been paid by Croll's estate, based on the assumption that the right of appointment would not be exercised, were now recoverable under the provisions of section 25 of the Act.

A petition for reassessment of the inheritance tax for Croll's estate was submitted by Continental Bank and Croll's sons (petitioners). The petitioners contended that a refund was due on the amount of taxes paid on the remainder interest, without regard to any distributions that may have been made to Florence from the corpus of the Marital Trust. The petitioners requested a refund in the amount of $434,357.89.

The State agreed that a reassessment and refund were in order. However, the State argued that the reassessment should take into account any distributions actually made by the corporate trustee to Florence from the corpus of the Marital Trust. Such distributions, said the State, were transfers from Croll's estate to Florence, subject to taxation. Any such transfer would reduce the amount of refund due under the reassessment. The State requested trust records to determine what, if any, distributions had occurred.

After a hearing on the matter, the circuit court ruled that any distributions of principal were "legally irrelevant" to the reassessment and denied the State's request for trust records. A motion for reconsideration was denied.

The circuit court entered an order reassessing the inheritance tax and judgment was entered on the court's finding that a refund of $434,357.89 was due. The State appealed and the circuit court stayed the refund pending appeal.

OPINION

The single issue before this court is whether a trustee's discretionary distributions of principal from a marital trust to the life tenant are relevant to the reassessment and refund of inheritance taxes on the remainder interest under the provisions of the Illinois Inheritance and Transfer Tax Act.

It is petitioners' position that discretionary transfers of principal by a trustee are irrelevant because the tax laws make no specific reference to such transfers in any part of the Act, particularly in section 25, when discussing reassessment. This silence, say the petitioners, should be construed in favor of the taxpayer.

The State contends that the resolution of this issue is governed by *In re Estate of Curtis*, 28 Ill. 2d 172, 190 N.E.2d 172 (1963). Based on the reasoning in *Curtis*, the State contends that any distributions of principal made to Florence from the marital trust must be considered transfers taxable to Croll's estate and taken into consideration when reassessing the tax on the remainder interest.

Analysis of the issue before this court begins with an understanding of *Curtis*.

John G. Curtis died testate in 1956. His will provided for the creation of a marital trust for the benefit of his wife. In addition to receiving a life estate in the income from the trust, the widow was granted "the right at any time and from time to time to withdraw any part or all of the principal of the Marital Trust." 28 Ill. 2d at 174. If any principal remained after the widow's death, it was to be added to a residuary trust for the benefit of other named successors.

Based on the Illinois Inheritance Tax Act in effect at that time, the remainder interest was taxed based on the assumption that the widow would *not* exercise her right to withdraw and that the principal would become part of the residuary trust. Ill. Rev. Stat. 1955, ch. 120, par. 398. In 1958, however, the widow withdrew the entire principal of the marital estate.

The trustees petitioned for a reassessment of the inheritance tax. Since the Act did not say how to treat a remainder interest if a power of withdrawal was exercised, the trustees reasoned that the power to withdraw should be likened to a power of appointment under subsection 4 of section 1 of the Act. Ill. Rev. Stat. 1955, ch. 120, par. 375(4). If so treated, the remainder interest of the marital estate would not be a taxable transfer in the estate of the deceased. Instead, the remainder interest would shift to become a part of the widow's estate, taxable only at the time of her death. Employing this reasoning, a refund of all of the inheritance taxes paid on the remainder interest was requested.

The State agreed that a reassessment was proper, but denied that the remainder interest in the marital estate should be excluded when recomputing the inheritance taxes for Curtis' estate. The remainder interest, argued the State, should be taxed in the deceased's estate as a transfer to the widow.

The circuit court found in favor of the State and the decision was affirmed on appeal. On appeal, our supreme court found that the remainder interest was a taxable part of the deceased's estate. Without deciding whether the power to withdraw was a right of appointment, the court held that "the privilege of withdrawal was a valuable right flowing from the trustor to his widow, and although the right itself was not immediately taxable to the widow, when she chose to exercise that right and accept the property, the transfer was completed and the property became taxable to her as a transfer from the trustor." *In re Estate of Curtis*, 28 Ill. 2d at 179.

Despite the fact that there was no explicit language in the Inheritance Tax Act that would support its finding, the Illinois Supreme

Court reached its conclusion, saying that "the intention of the legislature is to be gathered not only from the language used but also from the reasons for the enactment and the purposes to be thereby attained." *In re Estate of Curtis*, 28 Ill. 2d at 179. The court also noted that "[t]he Inheritance Tax Act [was] designed to tax the privilege of succeeding to the property rights of a deceased" and the timely collection of the taxes. The court said:

> "It is unbelievable that our legislature intended by this act to exempt from the donor's estate all property passing by the exercise of a power of appointment and to thereby delay the collection of any inheritance tax thereon until the death of the donee of such power. To so hold would be to materially affect the revenue producing purpose of the entire Inheritance Tax Act." 28 Ill. 2d at 179.

The *Curtis* decision guides us to our conclusion in this case. *Curtis* involved a remainder interest to the residuary estate that was extinguished, as does this case. But it was the treatment of the remainder interest when a power of withdrawal was exercised that was at issue. The Act made no provision for such an event. The court had to look to the purpose of the Act to determine the proper way of handling a situation that was not covered by the Act.

■ In this case the Act tells us what to do when the remainder interest is extinguished by a testamentary power of appointment— add it to the estate of the person exercising the power of appointment and remove it from the estate of the donor of the power of appointment. The question is whether, when reassessing taxes on the trustor's estate due to the extinguished remainder interest, we must ignore the realities that have transpired since the death of the donor and be tied to the mathematical figure that was determined earlier, based on the number of assumptions that were made to facilitate the recoupment of taxes. We think that question must be answered in the negative.

Viewing the Inheritance Tax Act in light of the *Curtis* decision, the trial court erred when it decided that any distributions of principal from the marital trust made by the trustee to Florence were irrelevant to the reassessment of inheritance taxes. The purpose of the Act is to impose a tax on "the transfer of any property, real, personal, or mixed, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted." Ill. Rev. Stat. 1959, ch. 120, par. 375. It was the intention of the legislature to tax this kind of transfer.

When a transfer involved a future, contingent interest, certain legal fictions had to be created to facilitate the timely collection of

taxes. Where property or an interest in property was divided into a life estate and a future, contingent remainder, the Act provided for a means of valuing both of these interests for taxation purposes. Ill. Rev. Stat. 1959, ch. 120, par. 376. Payment of taxes was not delayed on the value of the future, contingent interest. Instead, taxes were levied on the basis of certain assumptions.

Section 25 of the Act set forth the manner in which contingent interests were to be calculated. This section provided the basis for making certain assumptions and the means to obtain a reassessment and refund if the assumptions proved to be in error, resulting in an overpayment of taxes.

Section 25 provided that tax should be

> "imposed upon the transfer at the rate which would be applicable under the provisions of this Act on the happening of *the most probable of the contingencies* or conditions, based on the likely number and relationship of those to whom the property will eventually be transferred taking into consideration any applicable mortality and other experience tables and the number and ages of all persons in being when the tax is assessed." (Emphasis added.) Ill. Rev. Stat. 1959, ch. 120, par. 398.

For example, in this case the contingent remainder interest was to pass to the Croll sons. Thus, the tax rate assessed against the remainder interest was determined on the basis of the sons' familial relationship to the deceased and the statistical assumption that they would outlive their mother and complete the transfer.

In addition, according to another paragraph of section 25, the Act imposed the assumption that where an estate could be divested by an act or omission of the legatee, taxation should be imposed as if there were no such possibility of divestiture. In other words, where, as in this case, the future contingent interest could be expunged by a testamentary right of appointment, this possibility was ignored when determining the inheritance taxes on the estate.

As noted earlier, the Act specifically provided that where a person is granted a right of appointment and exercises that right, the transfer is treated as though the property was "bequeathed or devised by such donee by will." Ill. Rev. Stat. 1959, ch. 120, par. 375(4). This provision has been interpreted to mean that the taxable transfer shifts from the estate of the donor to the estate of the donee. See J. Young, *Curtis Decision Marks A Significant Change in the Illinois Inheritance Tax*, 52 Ill. B.J. 226, 228 (1963).

Section 25 states that, "[o]n the happening of any contingency" in which the property would become exempt from taxation or that the tax rate would be lower, a reassessment or redetermination of

the tax is in order, with a return "of so much of the tax imposed and paid as is the difference between the amount paid and the amount which the person, corporation or institution should pay under the inheritance tax laws." Ill. Rev. Stat. 1959, ch. 120, par. 398.

Consequently, in this case, once Florence exercised her testamentary right of appointment, the remainder interest was no longer a taxable transfer in Croll's estate and the taxes already paid were subject to reassessment.

Although section 25 does not address distributions of principal from the life estate or, for that matter, any other events that might affect the remainder interest, the language cited above does not preclude consideration of such events when deciding the amount that the person "should pay."

In the present case, Florence did not have the ability to withdraw the entire principal, as the donee did in *Curtis*. But she was not without power over the distribution of principal from the marital trust. The corporate trustee could be removed by Florence and her son, Florence could have refused to accept the distribution of funds, and she need not have requested additional funds. In any event, the right to receive distributions of principal was a "valuable right flowing from the trustor to his widow," which, though not immediately taxable, became subject to taxation when the transfer was completed. *In re Estate of Curtis*, 28 Ill. 2d at 179.

The Marital Trust provided that the corporate trustee could distribute up to 5% of the corpus of the marital trust yearly. Since the marital trust in this case exceeded $4 million, there was a potential for Florence to receive a significant amount of money over her lifetime. As in *Curtis*, we find it "unbelievable that the legislature intended to exempt" such funds from taxation.

For this reason, a reassessment of inheritance taxes should not have been limited to the extinguished remainder interest, but should have taken into consideration distributions, if any, of principal to the life tenant (Florence). Florence may not have received any of the corpus of the trust, but the State was entitled to discover whether any distributions had been made.

The *Curtis* decision generated much discussion among the leading tax authorities of this state. It was noted by Professor Young, who was generally recognized as a tax law authority, that based on the 1959 amendment to section 25 of the inheritance tax laws, application of *Curtis* could result in significant tax savings to the taxpayer. See J. Young, *Curtis Decision Marks A Significant Change in the Illinois Inheritance Tax*, 52 Ill. B.J. 226, 230-31 (1963). It was suggested that, if the legislative intent to protect revenue was to be furthered, amendment was necessary.

The legislature responded, amending the Act. As proposed by Professor Young, where the testator granted a person an unlimited power to "withdraw, invade, consume or appropriate" the future contingent remainder interest for oneself, the *assumption* in section 25 was changed. For the purposes of determining the inheritance tax due, it would now be assumed that the power *would be exercised*. As always, the tax was subject to reassessment should this assumption be incorrect.

Petitioners rely on the fact that amendment of the law subsequent to *Curtis* addressed only the "unlimited" power of a donee to invade principal. This fact, they say, supports their position that discretionary distributions of principal by a trustee based on need factors are not intended to be interpreted as taxable transfers in the donor's estate and should not be considered in the reassessment.

■ We do not see any real difference, for inheritance tax purposes, between an unlimited power to withdraw principal by a donee and a discretionary power of distribution by a trustee. Professor Young wrote:

> "Applying the *Curtis* doctrine to transfers by which a trustee is given a completely discretionary power to invade corpus for the income beneficiary, the section 25 tax would be assessed on the assumption that the power would be exercised to the fullest extent in the same manner as if the income beneficiary had been given the power of withdrawal." 52 Ill. B.J. at 235.

Although the legislature did not act on this recommendation when it amended the statute, we do not interpret the legislature's silence in this area to mean that it intended to exempt such transfers from taxation.

Certainly, under the 1959 amendment, when contingencies that would serve to *increase* the tax assessment occur, a section 25 reassessment is not necessary. Nevertheless, where, as here, a remainder interest is extinguished, resulting in a tax reassessment and refund, it makes sense to take into account all actual events which would factor into the reassessment.

CONCLUSION

Based on the reasoning in *Curtis*, distributions of principal from a marital trust should be deemed transfers taxable in the donor's estate. The general purpose of the Act is to tax all such transfers. To accomplish this purpose in a timely fashion certain legal fictions initially are assumed. However, it is appropriate, when a reassessment is requested, that the recalculation should dispel legal fictions and take into account what actually happened. When calculating the

refund due, the trial court should consider any distributions of principal to Florence.

The trial court's order is vacated and this cause is remanded for proceedings consistent with this opinion.

Vacated and remanded.

BUCKLEY, J., concurs.

PRESIDING JUSTICE CAMPBELL, dissenting:

I respectfully dissent from the opinion of the majority. Section 25 of the 1959 version of the Illinois Inheritance Tax Act (Act) provides for a tax upon the transfer of inherited property as well as for reassessment of the tax when a power of appointment is exercised contrary to an assumption upon which a prior tax was assessed:

> "When property is transferred or limited in trust or otherwise, and the rights, interest or estates of the transferees, or beneficiaries are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, *a tax shall be imposed upon the transfer* at the rate which would be applicable \*\*\*. \*\*\* *On the happening of any contingency whereby the property, or any part thereof is transferred* to a person, corporation or institution exempt from taxation under the provisions of the inheritance tax laws of this State, *or to any person, corporation or institution taxable at a rate less than the rate imposed and paid*, the person, corporation or institution shall be entitled to a reassessment or redetermination of the tax and to a return by the State Treasurer of so much of the tax imposed and paid as is the difference between the amount paid and the amount which the person, corporation or institution should pay under the inheritance tax laws." (Emphasis added.) Ill. Rev. Stat. 1959, ch. 120, par. 398.

Thus, the Act assessed a tax on the contingent future interest under Frederick Croll's estate. See Ill. Rev. Stat. 1959, ch. 120, par. 375. That future interest was extinguished when Mrs. Croll exercised a testamentary power of appointment and directed that the principal of the trust be transferred to her estate. That transfer was not subject to tax. As quoted above, section 25 of the Act provides that where a property interest is extinguished due to the exercise of a power of appointment over the property, reassessment and redetermination of tax is appropriate.

The Act is structured such that a tax is assessed on certain assumptions, and those assumptions hold, regardless of subsequent events, unless the Act provides otherwise. The legislature assumed

that Mrs. Croll's power of appointment would go unexercised and that the remainder interest would eventually vest. The Act therefore assessed a tax on the contingent future interest under Frederick Croll's estate.

Our supreme court has definitively held that: "[t]axing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt[,] they are construed most strongly against the government and in favor of the taxpayer." (Emphasis omitted.) *Arenson v. Department of Revenue*, 279 Ill. App. 3d 355, 358 (1996), citing *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 545 N.E.2d 695 (1989); *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941). Thus, it is apropos that the Act is completely silent on distributions of principal by a trustee. There is no reference in the Act to trustee distributions of principal affecting either the assessment of tax on a life estate or the reassessment of tax on the exercise of a power of appointment. The Act therefore cannot be contorted to extrapolate the imposition of a tax on discretionary distributions of principal by a corporate trustee.

However, contrary to the record, the majority engages in hypothetical supposition in determining that the Treasurer may consider any distributions possibly made to Mrs. Croll. For example, the majority speculates that "the corporate trustee *could* be removed by Florence and her son," or that "Florence *could* have refused to accept the distribution of funds." 284 Ill. App. 3d at 110. (Emphasis added.) The record does not reveal that either of these events in fact occurred.

In addition, the majority presumes that the petitioners are attempting to avoid a tax by claiming that certain transfers are "exempt" from taxation. The majority has misread section 25. Section 25 provides for a refund of taxes paid to *either* an exempt individual, corporation, etc., *or* to an individual, corporation, etc., "taxable at a rate less than the rate imposed and paid." Ill. Rev. Stat. 1959, ch. 120, par. 398. Petitioners are claiming the latter, not the former.

Moreover, the present case is distinguishable from *In re Estate of Curtis*, 28 Ill. 2d 172, 190 N.E.2d 723 (1963), upon which the majority relies. In *Curtis*, the life tenant of a marital trust was granted an unlimited power to withdraw funds from the trust principal. Shortly after the death of the trustor, and long before her own death, the life tenant, Mrs. Curtis, exercised this power by withdrawing all of the principal, thereby extinguishing the remainder interest in the trust. After Mrs. Curtis' death, the trustees petitioned for a reassessment of the tax originally paid on the remainder interest following her life

estate. The trustees argued that Mrs. Curtis' exercise of her power of withdrawal was *the same* as the exercise of a power of appointment, which, under section 1(4) of the Act, would mean it was taxable against her estate as a transfer upon *her* death, not upon the death of her husband. Therefore, the trustees argued that the inheritance tax payable by reason of the trustor's death was less than previously assessed, and the estate was entitled to a refund of approximately $100,000. *Curtis*, 28 Ill. 2d at 175.

The State responded that the total withdrawal of the principal by Ms. Curtis was not the same as an exercise of a power of appointment, and that while reassessment was necessary, the remainder interest of the marital trust should be excluded in computing the reassessment. Rather, the State argued that the value of the remainder should be taxed in the trustor's estate as a transfer to his widow, thereby resulting in a reduced refund of approximately $12,000. The circuit court agreed with the State and reassessed the inheritance tax accordingly.

On appeal, our supreme court affirmed the reassessment of the circuit court, holding that "under the circumstances of this case," the value of the remainder interest of the marital trust was properly taxed as a transfer from the donor to his widow. *Curtis*, 28 Ill. 2d at 178-79. While the *Curtis* court did not conclude that the withdrawal privilege was a power of appointment *per se*, the majority concludes without authority that there is no "real difference" between an unlimited power of a donee to withdraw principal and a discretionary power of distribution by a trustee.

In the present case, distributions of principal under this instrument were limited by an ascertainable standard. The corporate trustee had the sole right under circumstances restricted to insufficient income for proper support, maintenance and medical attention to make small distributions to Mrs. Croll from the trust corpus. Mrs. Croll had no power of withdrawal but, rather, a mere testamentary power of appointment. (The majority incorrectly states that Mrs. Croll was "not without power over the distribution of principal from the marital trust." 284 Ill. App. 3d at 110.) While Mrs. Curtis circumvented the trust apparatus by terminating the trust and taking the entire principal shortly after her husband died, Mrs. Croll could not have done the same. The trustee had the sole power of distributing to Mrs. Croll a maximum of 5% *per annum* of the principal, at which rate it would have been mathematically impossible to extinguish the principal through distributions. Thus, it is clear that distributions of principal were limited by an ascertainable standard.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. Legislative intent is best determined by the statutory language, which should be given its plain and ordinary meaning: "there is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83, 630 N.E.2d 820, 823 (1994). Contrary to the determination of the majority, the supreme court in *Curtis* did not declare the exercise of a testamentary power of appointment a "taxable transfer" under the Act.

"[T]he enumeration of one thing in a statute implies the exclusion of all others." *Baker v. Miller*, 159 Ill. 2d 249, 260, 636 N.E.2d 551, 556 (1994). In subsequent amendments to the Act, the legislature continued to ignore discretionary distributions of principal, despite the recommendations of commentators. In 1965 the Act was amended so that a beneficiary's power to withdraw principal would be assumed to be exercised and the initial tax would be assessed as though the first spouse gave all of the property to the survivor. See Ill. Rev. Stat. 1965, ch. 120, par. 398. Because our General Assembly did not choose to amend the Act to impose a tax upon "any distribution" from the corpus of an estate nor to specify all situations under which a tax would not be triggered, our supreme court's holding in *Curtis* is limited to the specific facts and circumstances of that case.

"When the legislature is silent, a court may not fill a void through judicial interpretation." *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill. App. 3d 1065, 1068, 645 N.E.2d 453, 455 (1994). I believe that the majority here engages in impermissible judicial legislation by redrafting section 25 to impose additional taxes upon alleged distributions of the principal of a trust.