(Nos. 31063, 31119.—

Byron Massell, *et al.,* Appellees, *vs.* Richard J. Daley, Director of Revenue, *et al.,* Appellants.—Roth, Inc., *et al.,* Appellees, *vs.* Richard J. Daley, Director of Revenue, *et al.,* Appellants.

*Opinion filed November 22, 1949—Rehearing denied Jan. 12, 1950.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellants.

MICHAEL M. PHILLIPS, THOMAS ROSENBERG, and MILTON T. RAYNOR, all of Chicago, for appellees Byron Massell et al.; LEONARD H. LAWRENCE, of Chicago, for appellees Roth, Inc., et al.

Mr. JUSTICE FULTON delivered the opinion of the court:

These cases brought in the circuit court of Cook County by various owners of night clubs in the city of Chicago against the Director of the Department of Revenue of the State of Illinois, the State Treasurer and the Attorney General of Illinois, seek to enjoin these officials from taxing them under the Retailers' Occupation Tax Act, upon the theory that plaintiffs are primarily theater restaurants and night clubs for the entertainment of their patrons and that their sale of meals, refreshments and beverages is only incidental to the business of a night club or theater and, therefore, such sales are not subject to the tax.

In the *Byron Massell case,* cause No. 31063, the complaint was filed on November 13, 1945, and on November 14, 1945, a temporary injunction was issued impounding in a protest fund all of the taxes paid within 30 days prior to the filing of the complaint and thereafter to be paid by

the plaintiffs. From time to time various other night clubs on petition were by order of court granted leave to become additional parties plaintiff and the temporary injunction extended to include such plaintiffs. No answer or appearance was filed by the State officials until November 23, 1948, at which time George F. Barrett, as Attorney General, filed the appearance of the State officials and a motion to strike the complaint. On December 1, 1948, the trial court overruled the motion to strike, and the defendants elected to stand by their plea. The trial court entered a decree against the defendants on that date, holding that the plaintiffs were not subject to the taxes imposed by the act. Thereafter on December 20, 1948, a supplemental decree was entered ordering the defendants to make certain specific refunds to these plaintiffs from the protest fund which had been accumulated under the temporary injunction. At that time the assistant Attorney General consented to the entry of this supplemental decree by writing thereon, "Checked and found correct by Oliver Bovik, Ass't. Atty. Gen'l." Subsequently, on December 29, 1948, the Treasurer of the State of Illinois, with knowledge and consent of the Department of Revenue, paid the amounts pursuant to the decree unto the plaintiffs and a satisfaction of judgment was thereafter filed by the plaintiffs. The total refund paid was $239,880.85. The judgment for these amounts was entered only upon the affidavits of the respective plaintiffs and it appears that no testimony was presented in court as to the amount of the alleged refunds. Thereafter, on January 21, 1949, notice of appeal was filed by the present Attorney General.

In the case of *Roth, Inc.* v. *Richard J. Daley et al.,* the original complaint was filed on May 9, 1941. It asserted that the plaintiffs, all of whom operated night clubs, were primarily in the business of entertainment and that the serving of foods and beverages was incidental to that business and, therefore, they were immune from the Re-

tailers' Occupation Tax Act both as to cover charge and as to moneys charged for food and refreshments. Likewise, in that case a temporary injunction was issued on May 12, 1941, and moneys were paid into a protest fund pursuant thereto. On May 27, 1941, George F. Barrett, as Attorney General, filed an answer on behalf of the State officials and, aside from the filing of many intervening petitions adding various other night clubs as parties plaintiff, the cause continued to remain pending disposition or dismissal for want of prosecution until December 16, 1948. On that date the trial court entered its decree adjudging that the plaintiffs were primarily in the theater or entertainment business and that their sale of foods and drinks were incidental to that business and that, therefore, none of them were subject to the provisions of the Retailers' Occupation Tax Act and they were entitled to refunds of all taxes paid into the protest fund and subsequently would be required to pay no taxes under the act. This decree was based upon an amended complaint and motion to dismiss the same, which were filed on the same date of the decree by leave of court. On December 21, 1948, the trial court, after considering the affidavits of the plaintiffs, found that they were all entitled to refunds in varying amounts aggregating $91,912.97 and entered an order directing that those amounts be paid. In the decree of December 16, 1948, it appears that the trial judge or the assistant Attorney General present at that time wrote on the bottom of the decree the following: "No objection basis Pl. engaged primarily in entertainment business." On the decree of December 21, 1948, the assistant Attorney General wrote the following. "Checked and found correct by O. Bovik Ass't. Atty. General." Subsequently, on December 29, 1948, with the knowledge and consent of the Department of Revenue and of the Attorney General, the State Treasurer, pursuant to the decree, paid the full amount of the refunds to the plaintiffs.

On April 19, 1949, Ivan A. Elliott, the present Attorney General, filed a petition for leave to appeal from the decree of December 16, 1948, and the supplemental order or judgment on December 21, 1948, entered in the case of *Roth, Inc.* v. *Daley.* In that petition he claimed that he had no knowledge of the pendency of this case and its disposition until after the period for filing notice of appeal had expired. An answer to that petition was filed and subsequently this court granted leave to appeal and this case is now before us on the merits.

Because both of these cases involved similar questions of law and similar facts they have been consolidated by this court for consideration and opinion.

At the outset the plaintiffs contend that this court cannot consider this appeal for the reason that the appeal is perfected from a decree entered by consent of the defendants and also for the reason that the questions involved have become moot because of the voluntary payment of the judgments by the State officials. Normally, where a decree is entered by consent of the parties no appeal can be perfected therefrom because the decree is not a judicial determination of the rights of the parties but merely is a recital of the agreement of the parties. (*Bergman* v. *Rhodes,* 334 Ill. 137; *Paine* v. *Doughty,* 251 Ill. 396; *Armstrong* v. *Cooper,* 11 Ill. 540.) We have held that the only way such a decree may be set aside is by an original bill in the nature of a bill of review. (*Hohenadel* v. *Steele,* 237 Ill. 229.) Likewise we have held that where a judgment has been voluntarily paid the question becomes moot and that this court will not render a decision in a moot question. *Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508; *Sobieski* v. *City of Chicago,* 325 Ill. 259.

We have carefully examined the records presented in this appeal and we believe that it affirmatively appears that the decrees appealed from were, in fact, entered by consent

and did not constitute a judicial determination of the rights of the parties.

Section 23 of article IV of the constitution provides: "The General Assembly shall have no power to release or extinguish, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual to this state, or to any municipal corporation therein." We held in *People ex rel. Ames* v. *Marx*, 370 Ill. 264, that the Director of Finance could not cancel a bond given by a taxpayer for the purpose of guaranteeing the payment of taxes. In that case we said: "If the General Assembly cannot so release an obligation it is plain that the Director of Finance of the State of Illinois cannot release it." Likewise we have held that consent decrees adversely affecting the public interests may be reversed. (*Green* v. *Hutsonville Township High School District*, 356 Ill. 216; *People ex rel. Reinhart* v. *Herrin*, 284 Ill. 368.) It, therefore, appears to us that the decrees from which these appeals were perfected were not judicial determinations but were, in fact, attempts by State officials to contract with reference to the State revenue and that such decrees were not binding upon the State officials or the State of Illinois, and that appeals may be prosecuted from them.

The question has not become moot merely by the payment of the amounts ordered by the judgments, because the decrees purported to perpetually restrain the State officials from collecting taxes under the Retailers' Occupation Tax Act from these plaintiffs, therefore, affecting future tax collections.

This court held in *Brevoort Hotel Co.* v. *Ames*, 360 Ill. 485, that a restaurant operated by a hotel which was primarily engaged in the business of renting rooms, and whose expenses were primarily for the upkeep of the building, nearly all of which was occupied by rooms and the servicing of rooms, was, regardless of the primary source of the taxpayers' revenue, subject to the payment of a tax under

the Retailers' Occupation Tax Act for operation of a dining room where food and drinks were sold, and that such transactions amounted to sales within the meaning of the statute.

In *Continental Can Co.* v. *Nudelman,* 376 Ill. 446, the taxpayer was a manufacturing corporation selling none of its products at retail but it ran a cafeteria which was open only to its officers and employees and from which it made no real profit on the sale of food. In that case it was held that the sale of food by a business operating for profit, even though no profit came from the sale of the food, was taxable. Likewise, in *Snite* v. *Department of Revenue,* 398 Ill. 41, the taxpayer operated a golf course for profit, which was, of course, a nontaxable business under the act. He also operated, incidentally to the operation of the golf course, a bar and a restaurant. He contended that his business was primarily that of affording facilities for pleasure and that the sale of refreshments was incidental to that business. This court held that the regular and systematic sale of food and drinks constituted a taxable business, and that the taxpayer was not exempt from the provisions of the act. Likewise, in the case of *Ahern* v. *Nudelman,* 374 Ill. 237, the court considered the tax situation of funeral directors who were engaged in the business of providing burial services and incidentally thereto sold items of personal property, such as caskets and burial clothes. In that case we held that a fair apportionment of the revenue received from the sale of personal property and from the rendering of services could be made and that the business of undertaking was within the act to the extent of the revenue received from the sales of personal property by the undertaker.

It would, therefore, appear that from this court's prior rulings with reference to the interpretation of the Retailers' Occupation Tax Act, at least the portion of the plaintiffs' businesses which consists of selling food and beverages and other personal property is taxable, even though in

certain instances the sale of food, beverages and other personal property is incidental to the main business conducted by the plaintiffs of providing entertainment. In *Ahern* v. *Nudelman,* 374 Ill. 237, the contention was made that the primary purpose of a funeral director was to provide service, and the sale of caskets, vaults and burial clothes was merely incidental. We held that these items were subject to having an ascertained price regardless of the skill or service performed by the taxpayer. Likewise, in the case at bar, food, drinks and refreshments have a definitely ascertained price and their sale by these plaintiffs makes the plaintiffs subject to the act even though their primary business is that of providing entertainment. The argument has been made that plaintiffs' patrons are not interested in the quality, kind or quantity of the food or drink and become patrons solely because they desire to be entertained. As a matter of common knowledge this court is aware of the fact that such places make different charges for the food and drinks depending upon the kind, quality or amount served to the patron, and this conduct would seem to conclusively show that these plaintiffs are engaged in both the business of providing entertainment and in selling tangible personal property at retail within the purview of the Retailers' Occupation Tax Act, since their conduct is exactly the same as that of a restaurant or bar which provides no entertainment for its patrons.

It is, therefore, the opinion of this court that the decrees appealed from in the cases at bar had the effect of exempting and forgiving these plaintiffs from liability for taxes and, therefore, that the decrees are invalid and should be reversed. The question of the right to recover the amounts provided in said decrees is not before the court and we express no opinion thereon.

For the reasons stated in this opinion, the decrees of the circuit court of Cook County are reversed.

*Decrees reversed.*