(No. 52515.—

DEARBORN WHOLESALE GROCERS, INC., Appellant, v. ROBERT M. WHITLER, Director of Revenue, Appellee.

*Opinion filed November 18, 1980.*

Robert R. Tepper, Martin J. Friedman and Mitchell H. Macknin, of Chicago (Rosenthal & Schanfield, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (George H. Klumpner, Assistant Attorney General, of counsel), for appellee.

Harold T. Halfpenny, James F. Flanagan, Louis R. Marchese and Michael T. Reid, of Chicago (Halfpenny, Hahn & Roche, of counsel), for *amicus curiae* Illinois Wholesaler-Distributors Association.

John M. Cannon and Susan W. Wanat, of Mid America Legal Foundation, of Chicago, for *amici curiae* Chicago Association of Commerce and Industry *et al.*

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Dearborn Wholesale Grocers, Inc., filed a complaint for administrative review in the circuit court of Cook County against the defendant, Robert M. Whitler, Director of the Department of Revenue (the Department), to set aside an assessment of taxes claimed to be due under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*) and the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1). The circuit court granted the relief sought, the appellate court reversed (74 Ill. App. 3d 813), and we granted the plaintiff's petition for leave to appeal under

Rule 315 (73 Ill. 2d R. 315). We also granted leave to the Illinois Wholesaler-Distributors Association, the Chicago Association of Commerce and Industry, and the Illinois Manufacturers Association to file briefs *amici curiae*. Their briefs supported the plaintiff.

In 1975 the Department conducted a field audit of the plaintiff's revenues from July 1, 1972, to May 31, 1975. The auditor examined the plaintiff's invoices for three 10-day periods, and on the basis of his examination drew up corrected returns for the total time audited. Entries on the corrected returns show that deductions were allowed for 98.5% of the plaintiff's gross receipts during that period and that only the balance were treated as taxable sales. The Department issued a notice of tax liability for the delinquency, and the plaintiff filed a protest and requested an administrative hearing. At the close of the hearing the hearing officer recommended a final assessment in the amount of approximately $129,000, and the Department issued a final assessment for that amount.

In addition to the sums claimed to be due under the State and local retailers' occupation taxes, the assessment included an amount due under the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.1 *et seq.*). The use tax assessment is not contested. As to deficiencies under the Municipal Retailers' Occupation Tax Act, that act incorporates by reference all the provisions of the Retailers' Occupation Tax Act which are pertinent to this case, and only the latter, referred to hereafter as "the Act," need thus be considered.

At the hearing the Department introduced the corrected returns and the testimony of the auditor who had prepared them as its *prima facie* case pursuant to section 4 of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 443). The plaintiff then presented testimony from its officers and employees that it made no sales at retail but that all its sales, including those which were the subject of the assess-

ment, were made to retail grocery stores for the purpose of resale.

The plaintiff also introduced the invoices for sales made during the test periods of the audit. Although requested to do so by the auditor, the plaintiff had not made available for inspection any certificates from its customers that the merchandise covered by the invoices had been purchased for resale, and the plaintiff did not produce any such certificates at the hearing. The plaintiff did introduce affidavits by its salesmen, however, that whenever a new account was opened the retailer was required by the plaintiff to complete and sign a form prepared by the plaintiff in which the retailer stated that all merchandise to be purchased by him would be resold. The retailer was also required to furnish the registration number or sales number assigned to him by the Department. A blank copy of the form was attached to each salesman's affidavit. After being executed by the retailers these forms were returned to the plaintiff, but the completed forms, for reasons not shown by the record, were no longer in the plaintiff's possession at the time of the audit.

The foregoing evidence by the plaintiff was not controverted, and on the basis of it the hearing officer made a finding that the plaintiff was a wholesale grocer. He nevertheless concluded that the plaintiff's evidence was insufficient to rebut the Department's *prima facie* case, since the plaintiff had not documented the resale character of its individual sales as required by section 2c of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 441c). In reversing the circuit court the appellate court took essentially the same position as that of the hearing examiner.

The plaintiff makes the following contentions on appeal: Since it is not engaged in the business of selling property at retail and since these sales were not made at retail, section 2c is not applicable; if applicable, section 2c does no more than create a presumption of taxability,

and that presumption was rebutted by the plaintiff's evidence; if a failure to comply with section 2c makes the Department's determination of liability conclusive, then section 2c is unconstitutional; the plaintiff complied with section 2c since that section requires only that certificates of resale be obtained, which was done, not that they be retained until the date of audit so as to be available for inspection at that time.

Similar contentions relating to the construction and the validity of section 2c were advanced in *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216. The court disposed of that case on the ground that the plaintiff had failed to exhaust its administrative remedies, however, and the present case is thus the first to consider these issues.

Section 2c, a separate section and not a subdivision of section 2, was added to the Act in 1965 (1965 Ill. Laws 116). As amended in 1967 (1967 Ill. Laws 257), it reads as follows:

> "If the purchaser is not registered with the Department as a taxpayer, but claims to be a reseller of the tangible personal property in such a way that such resales are not taxable under this Act or under some other tax law which the Department may administer, such purchaser (except in the case of an out-of-State purchaser who will always resell and deliver the property to his customers outside Illinois) shall apply to the Department for a resale number. Such applicant shall state facts which will show the Department why such applicant is not liable for tax under this Act or under some other tax law which the Department may administer on any of his resales and shall furnish such additional information as the Department may reasonably require.
>
> Upon approval of the application, the Department shall assign a resale number to the applicant and shall certify such number to him. The Department may cancel any such number which is obtained through misrepresentation, or which is used to make a purchase tax-free when the purchase in fact is not a purchase for resale, or which no longer applies because of the purchaser's having discon-

tinued the making of tax exempt resales of the property.

The Department may restrict the use of the number to one year at a time or to some other definite period if the Department finds it impracticable or otherwise inadvisable to issue such numbers for indefinite periods.

Except as provided hereinabove in this Section, no sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale."

Section 2c is complemented by sections 1 and 2 (Ill. Rev. Stat. 1979, ch. 120, pars. 440, 441). The first paragraph of section 2 states:

"A tax is imposed upon persons engaged in the business of selling tangible personal property at retail at the rate of [a prescribed percentage] of the gross receipts from such sales of tangible personal property ***."

The paragraph goes on to enumerate various exceptions not relevant here.

The first paragraph of section 1 of the Act defines a retail sale as follows:

" 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale in any form as tangible personal property to the extent not first subjected to a use for which it was purchased, for a valuable consideration: ***." Ill. Rev. Stat. 1979, ch. 120, par. 440.

The second paragraph also relates to a retail sale. It provides:

" 'Sale at retail' shall be construed to include any transfer of the ownership of or title to tangible personal property to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration, *and to include any transfer, whether made for or without a valuable consideration, for resale in any form as tangible personal property unless made in compliance with*

*Section 2c of this Act."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 440.

The italicized portion of the foregoing paragraph was added in 1965 by the same amendment which enacted section 2c.

The position of the appellate court was that the last paragraph of section 2c and the final clause of the second paragraph of section 1, taken together, permit the imposition of the tax upon any person making a sale for resale, even though the sale is at wholesale, if he has not obtained certain information from the purchaser. It is not clear from the opinion of the court whether it is the purchaser's registration number, his resale number, or a "certificate of resale" which the court believed that the plaintiff was required to obtain. We need not consider what section 2c requires in the way of documentation, however, for we agree with the plaintiff that the Act does not apply to it.

The Act is entitled "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption" (1933 Ill. Laws 924), and the same limitation appears in section 1 of the Act. That characterization of the Act formed the basis of the decision in *Reif v. Barrett* (1933), 355 Ill. 104, sustaining the Act against various constitutional challenges (355 Ill. 104, 122-24), and over the years the court has repeatedly expressed the view that it is not the sale of property but the business of selling it for use or consumption which is the subject of the tax. *Revzan v. Nudelman* (1938), 370 Ill. 180, 183-84, 186; *Fefferman v. Marohn* (1951), 408 Ill. 542, 545-46; *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 65; *Central Television Service, Inc., v. Isaacs* (1963), 27 Ill. 2d 420, 426.

While the amendments with which we are here concerned do not in terms purport to impose the retailers' occupation tax upon a wholesaler, that is their effect

under the construction given them by the appellate court: A wholesaler, like the plaintiff here, is assessed for a supposed tax deficiency; section 4 makes the Department's corrected returns presumptively correct; if the wholesaler cannot prove that his sales were for resale by the documentation prescribed by section 2c, then section 1 renders the presumption of liability conclusive. The wholesaler is made liable for the tax despite uncontroverted evidence that he is not engaged in the business of selling property at retail, and indeed makes no retail sales at all.

Such an anomalous result could not occur in the absence of these amendments, for without them the plaintiff's evidence would have been sufficient to rebut the Department's *prima facie* case. (*Fashion-Bilt Cloak Manufacturing Co. v. Department of Finance* (1943), 383 Ill. 253.) Under our decisions this attempt by indirection to extend the retailers' occupation tax to one not engaged in that business would invalidate the amendments.

These amendments were enacted in 1965 and 1967, and they are therefore subject to the provisions of the Illinois Constitution of 1870. (*People ex re. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 76.) Article 4, section 13, of the 1870 Constitution limits the contents of an act to the subject expressed in its title. (*International Business Machines Corp. v. Department of Revenue* (1962), 25 Ill. 2d 503.) For this reason we held invalid in that case an amendment to the Act which expanded the definition of "sale at retail" so as to subject to the retailers' occupation tax a lease of personal property as opposed to a sale. *Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, again, held invalid amendments which declared that persons engaged in certain service occupations should be deemed to be engaged in the business of selling personal property. And in *Stolze Lumber Co. v. Stratton* (1944), 386 Ill. 334, *overruled on other grounds* in *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, an

amendment viewed by the court as extending the Act from the business of selling at retail to that of selling at wholesale was also declared unconstitutional.

A related consideration is that by limiting the tax to sales at the retail tax level the legislature avoided the multiple taxation which would result if sales at every level of the distributive process were taxed. (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 65.) There is nothing in the record to suggest that the customers of the plaintiff have not paid the tax which the Department now seeks to recover from the plaintiff.

If section 2c is construed as applying only to retailers, the problems just discussed are eliminated. Analysis of the section discloses that such a construction is indeed the correct one. The key term in the section is "purchaser," which is defined in the Act as *"anyone who, through a sale at retail,* acquires the ownership or title to tangible personal property for a valuable consideration." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 440.) The plaintiff's customers are plainly not "purchasers" from it in the sense in which the Act defines that term, and it is not the transactions between the plaintiff and its customers at which the section is directed.

The apparent purpose of section 2c is rather to provide a means of verifying a claim made by a person subject to the Act as a retailer that a particular sale by him is exempt from tax because the purchaser is not himself the ultimate user or consumer of the property. Situations of that sort have arisen, for example, where the purchaser is a hospital and the property is purchased for the use of its patients. (See, *e.g., Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55; *Burrows Co. v. Hollingsworth* (1953), 415 Ill. 202). In such a case the hospital, since it is not engaged in the business of selling property at retail, would not hold a registration number from the Department (Ill. Rev. Stat. 1979, ch. 120, par. 441a). The requirement

made by section 2c that the retailer secure a certificate of resale from the hospital would furnish a means of verifying that the hospital's purchase was indeed for resale.

The Department contends that the fourth and fifth paragraphs of section 7 (Ill. Rev. Stat. 1979, ch. 120, par. 446), although not cited by the appellate court, support its decision. Section 7 relates to records which must be maintained by taxpayers, and specifies the kind of documents and the information which they must contain if deductions claimed on a tax return for sales for resale are to be allowed. The fourth and fifth paragraphs, which were added in 1967 (1967 Ill. Laws 258), provide:

> "Except in the case of a sale to a purchaser who will always resell and deliver the property to his customers outside Illinois, anyone claiming that he has made a nontaxable sale for resale in some form as tangible personal property shall also keep a record of the purchaser's registration number or resale number with the Department.
>
> It shall be presumed that all sales of tangible personal property are subject to tax under this Act until the contrary is established, and the burden of proving that a transaction is not taxable hereunder shall be upon the person who would be required to remit the tax to the Department if such transaction is taxable. *** "

Section 7 is directed to persons engaged in the business of selling tangible personal property at retail, and section 3 (Ill. Rev. Stat. 1979, ch. 120, par. 442), the provision which requires the filing of returns, is similarly limited. For that reason and for the reasons given in the previous discussion of section 2c, the reference in section 7 to "all sales of tangible personal property" must be construed to mean sales by persons engaged in the business of making such sales at retail.

In its brief the Department also cites *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154, as having held "the statutory requirement of a resale certificate was mandatory to gain entitlement to the sale for resale

exemption." *Copilevitz* did not so hold. The decision there did not rest on the taxpayer's failure to obtain a resale certificate but on his failure to produce evidence of any kind whatsoever that certain unreported receipts originated in sales for resale. The transactions, moreover, took place over 10 years before section 2c was enacted, and the taxpayer was a retailer.

For the reasons given in this opinion the judgment of the appellate court is reversed and that of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*