ILLINOIS CEREAL MILLS, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT
OF REVENUE, Defendant-Appellant.

Fourth District    No. 17473

Opinion filed April 26, 1982.

WEBBER, J., dissenting.

Tyrone C. Fahner, Attorney General, of Chicago (Paul J. Bargiel, Special
Assistant Attorney General, of Doss, Puchalski, Keenan, Bargiel & Dicks, Ltd., and
Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Hamilton Smith, of counsel), for
appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 2, 1979, defendant, Department of Revenue, State of Illinois, issued a final assessment against plaintiff, Illinois Cereal Mills, Inc., imposing liability against plaintiff in the total sum of $67,135.05 for taxes assessed under the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*); the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.1 *et seq.*); the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1); and the Municipal Use Tax Act (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—6). Plaintiff appealed that determination to the circuit court of Edgar County. On September 3, 1981, that court determined that portions of the assessment were for sales made to purchasers for resale by them and thus not retail sales within the meaning of the foregoing acts, affirmed the assessment in the amount of $26,021.54, reversed the assessment for the balance, and entered judgment accordingly. Defendant appeals.

The acts previously described were not intended to impose a tax on sales to purchasers who will, in turn, sell at retail the items purchased. Section 2c of the ROTA (Ill. Rev. Stat. 1979, ch. 120, par. 441c) was enacted to provide a means of verifying that sales claimed by retailers as having been made for resale were in fact of that category. (*Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 413 N.E.2d 370.) Section 2c states in pertinent part:

> "If the purchaser is not registered with the Department as a taxpayer, but claims to be a reseller of the tangible personal property in such a way that such resales are not taxable under this Act or under some other tax law which the Department may administer, such purchaser (except in the case of an out-of-State purchaser who will always resell and deliver the property to his customers outside Illinois) shall apply to the Department for a resale number. Such applicant shall state facts which will show the Department why such applicant is not liable for tax under this Act or under some other tax law which the Department may administer on any of his resales and shall furnish such additional information as the Department may reasonably require.
>
>    * * *
>
> Except as provided hereinabove in this Section, no sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." Ill. Rev. Stat. 1979, ch. 120, par. 441c.

Except for a few sales for small sums which will be discussed later,

the evidence at the hearing before defendant showed conclusively that the sales giving rise to the disputed portion of the assessment were for resale, but plaintiff did not comply with the literal documentation and verification requirements of section 2c. The evidence also conclusively showed that plaintiff, whose principal products are vegetable oil and feed for livestock, sells its products almost entirely for resale but does make a small but not isolated amount of sales to the ultimate consumers. Of those originally in question, sales totaling approximately $110,000 were admitted by plaintiff's officers to have been made at retail.

Plaintiff maintains that: (1) under *Dearborn*, section 2c of the ROTA does not make the furnishing of resale certificates from purchasers having an active registration or resale number from the department a condition precedent to the exemption of sales for resale from taxation; (2) section 2c would violate the uniformity provision of article IX, section 1, of the Illinois Constitution of 1870 and the equal protection clause of the United States Constitution if it were construed to bar those making sales for resale from proving their sales were for resale by means other than resale certificates merely because they make a few sales at retail; and (3) some of its sales for resale were exempt under article I, section 10, clause 2, of the United States Constitution, commonly referred to as the export clause. For the first time on appeal plaintiff maintains defendant is collaterally estopped from claiming plaintiff was required to meet the certificate requirements of section 2c.

■■ We must summarily reject the collateral estoppel contention. The extreme reluctance of Illinois courts to apply any kind of estoppel against the State in cases where the revenue is involved is well documented. The supreme court stated in *People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 220, 306 N.E.2d 7, 12, "Our decisions, however, have made it clear that the doctrine of estoppel cannot be invoked where governmental activities of the State are concerned, *particularly those relating to the public revenues*, except in extraordinary circumstances." (Emphasis added.) Similarly, in a suit where the Department of Revenue sought to subpoena a taxpayer's books and records after the taxpayer had previously submitted its books and records to the department for audit, obtained a notice of tax liability for ROTA taxes, and paid the amount determined, the supreme court held the department was not estopped from requiring production of the documents, in order to examine them, concerning the period for which the taxes had already been paid. The court stated, "It is firmly established that where the public revenues are involved, public policy ordinarily forbids the application of estoppel to the State." *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 4, 280 N.E.2d 437, 439.

No case has been called to our attention concerning the question of

the application of the type of estoppel known as collateral estoppel or estoppel by verdict in a suit involving the assessment for or collection of taxes for the State as distinguished from the units thereof. However, in *People v. Chas. Levy Circulating Co.* (1959), 17 Ill. 2d 168, 161 N.E.2d 112, a circuit court order sustaining an objection to an assessment of capital stock for tax purposes was reversed on appeal. The tax involved the revenue of a county. In holding that the county was not estopped as to an issue decided in a previous case between the parties, the court stated that neither equitable estoppel nor "estoppel by verdict" applies "to the State or a county in the collection of its revenues by taxation." (17 Ill. 2d 168, 176, 161 N.E.2d 112, 116.) The court overruled *People ex rel. Carr v. Omega Chapter of Psi Upsilon Fraternity* (1927), 324 Ill. 540, 155 N.E. 279. Although the issue in *Chas. Levy Circulating Co.* concerned the revenue of a county, the *dictum* that the same rule was applicable to matters concerning the "revenue by taxation" of the State was direct and strong. The logic of applying the rule by analogy to matters concerning the State revenue is of overwhelming strength. (See also *People ex rel. Nelson v. Ridgeway Services, Inc.* (1975), 32 Ill. App. 3d 478, 335 N.E.2d 503.) Defendant's claim for taxes was not barred by collateral estoppel.

In *Dearborn*, the taxpayer filed a complaint for administrative review of assessments for taxes arising under the ROTA and Municipal Retailers' Occupation Tax Act. The circuit court reversed the administrative decision. The appellate court reversed the circuit court. The supreme court reversed the appellate court and set aside the assessment. There, as here, the taxpayer was unable to show compliance with section 2c of the ROTA but showed that it made sales only at wholesale. The supreme court examined section 2c and also the portion of section 1 of the ROTA (Ill. Rev. Stat. 1979, ch. 120, par. 440) defining the term "Sale at retail," noting that those sections were provided for by amendments to the ROTA made in 1965 and 1967 while article IV, section 13, of the Illinois Constitution of 1870 was in force. Because section 13 limited the contents of an Act to the subject expressed in its title and the title of the ROTA was " 'An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption' (1933 Ill. Laws. 924)" the court held section 2c to be inapplicable to sellers not selling at retail. (*Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 477, 413 N.E.2d 370, 373.) The court noted that it had always held the subject of the tax was not merely the selling of goods but the selling of them for use or consumption. It also noted that the word "purchaser" as used in section 2c was defined in section 1 as " 'anyone who, through a sale at retail, acquires the ownership or title to tangible personal property for a valuable consideration.' " 82 Ill. 2d 471, 479, 413 N.E.2d 370, 374.

■■ Plaintiff argues that because a retailer can be held to be also operating in other capacities (see *Massell v. Daley* (1949), 404 Ill. 479, 89 N.E.2d 361; *Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877), section 2c violates article IV, section 13, if it makes compliance therewith a requirement for tax exemption for sales for resale made by a seller who also makes sales for retail. However, the *Dearborn* court stated: "If section 2c is construed as applying only to retailers, the problems just discussed are eliminated." (*Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 479, 413 N.E.2d 370, 374.) The problems discussed were those caused by article IV, section 13. For section 2c to apply only to retailers who do not also sell for resale would make section 2c meaningless, for it applies only to sales for resale. The *Dearborn* opinion clearly intended for section 2c to be a requirement for retailers who also sell for resale. We find no indication in the opinion that the court intended section 2c to be inapplicable to those, like plaintiff, who sell mostly for resale but make some sales at retail. The making of those sales brings it within the coverage of the section.

■■ Plaintiff also maintains that because its retail sales are such a small part of its total sales, its position is not sufficiently different than that of a taxpayer whose sales are all for resale, to permit subjecting it to section 2c requirements when the latter is not so subjected. It contends that in doing so section 2c violates the uniformity requirements of article IX, section 1, of the Illinois Constitution of 1870 and the equal protection clause of the fourteenth amendment to the Constitution of the United States because of the lack of a reasonable basis for the difference. (*Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698.) However, we find a reasonable basis to exist. The purpose of section 2c is to verify that a sale is exempt. (*Dearborn.*) A greater chance that a sale may erroneously be claimed as resale exists when the seller sells both at retail and for resale than when the seller is shown to be selling exclusively for resale. Accordingly, requiring stricter verification is justified under the circumstances. The legislation meets constitutional muster.

We are unable to find evidence in the record to support plaintiff's claim that some of its sales for resale for which taxes were assessed were for export. Plaintiff's brief does not give us a clue as to where that evidence is. Accordingly, we also reject that contention.

■■ The record does show that a small amount of the Use Tax was assessed because of a purchase by plaintiff of $19 worth of burlap bags. As these bags were used to package products sold, we agree with the circuit court that these purchases were for resale and not subject to the use tax.

The judgment of the circuit court is reversed and the assessment made by the defendant is affirmed except in regard to the use tax assess-

ment previously described. That portion of the judgment is affirmed. The case is remanded to the circuit court of Edgar County with directions to enter judgment in accordance with this opinion.

Affirmed in part; reversed in part; remanded.

LONDRIGAN, J., concurs.

JUSTICE WEBBER, dissenting:
I concur with my colleagues on the questions of estoppel, constitutional sufficiency of section 2c, and export. However, insofar as they read *Dearborn* and section 2c to mandate that any retail sale, no matter how insignificant, converts a taxpayer whose principal business is wholesaling into a retailer, I dissent.

In *Dearborn* the supreme court reiterated its longstanding position that the ROTA is an excise tax on the privilege of making retail sales and has no application otherwise. There the taxpayer maintained that it was not a retailer, although a field audit by the Department indicated that about 1.5% of its gross sales might have been at retail for the period concerned. The hearing examiner held that the taxpayer was a wholesaler but nonetheless held it subject to 2c. The appellate court took essentially the same position but was reversed by the supreme court, which said:

"While the amendments with which we are here concerned [section 2c added by amendment in 1965 and itself amended in 1967] do not in terms purport to impose the retailers' occupation tax upon a wholesaler, that is their effect under the construction given them by the appellate court: A wholesaler, like the plaintiff here, is assessed for a supposed tax deficiency; section 4 makes the Department's corrected returns presumptively correct; if the wholesaler cannot prove that his sales were for resale by the documentation prescribed by section 2c, then section 1 renders the presumption of liability conclusive. The wholesaler is made liable for the tax despite uncontroverted evidence that he is not engaged in the business of selling property at retail, and indeed makes no retail sales at all.

Such an anomalous result could not occur in the absence of these amendments, for without them the plaintiff's evidence would have been sufficient to rebut the Department's *prima facie* case. [Citation.] Under our decisions this attempt by indirection to extend the retailers' occupation tax to one not engaged in that business would invalidate the amendments." *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 477-78, 413 N.E.2d 370, 373.

The instant case is unlike *Dearborn* in that the plaintiff here admitted

to certain retail sales, although in a lesser amount (about .66% of its gross) than that found by the audit in *Dearborn*. In my judgment it makes no difference whether the retail sales are admitted by the taxpayer or maintained by the audit. ROTA can apply only to such sales as can be established to be at retail and not for resale.

The essential teaching of *Dearborn* is that there are two types of evidence involved, contrary to the position of the Department, which maintains that the resale registration is exclusive. In the first instance the taxpayer may introduce whatever kind of evidence is available to it to establish the nature of its business and the nature of the specific sales in question. In *Dearborn* it consisted of affidavits from its salesmen and the general registration number of its purchasers; no resale certificates were introduced. On this basis the supreme court held that the taxpayer was exclusively a wholesaler.

Once it has been established that there are retail sales, whether by the introduction of evidence or by admission as in the instant case, then, and then only, does section 2c come into play and exemption can be established solely by the resale certificates. This is the second type of evidence, but it will never be reached until it is first established that the taxpayer acted as a retailer as to some sales. In my opinion the supreme court made this plain in *Dearborn* when it said:

"The apparent purpose of section 2c is rather to provide a means of verifying a claim made by a person *subject to the Act as a retailer* that a particular sale by him is exempt from tax because the purchaser is not himself the ultimate user or consumer of the property." (Emphasis added.) (82 Ill. 2d 471, 479, 413 N.E.2d 370, 374.)

If it were otherwise, as the supreme court indicated in the prior quotation, it would be compelled under its prior decisions to hold section 2c unconstitutional.

This is precisely what the trial court did in the instant case. It examined evidence which led it to conclude that the major portion, or $597,949.50, of the questioned sales of $710,830 were of a wholesale nature to which the ROTA could not apply. As to the balance, it held them to be taxable and reduced the assessment accordingly.

Admittedly, the Department has a more difficult time when the taxpayer is acting in the capacities of both wholesaler and retailer, but it cannot be permitted to use section 2c, which was enacted presumably to make its job easier with retailers, as a dragnet to include all sales made by anyone conducting business of any nature within the State of Illinois. The ROTA remains a tax on the privilege of doing a retail business and no other.

*Dearborn* found the taxpayer to be exclusively a wholesaler and not subject to the ROTA in any respect. I find nothing in that opinion which

prevents a taxpayer from acting in both capacities, *i.e.*, wholesaler and retailer, and segregating its sales accordingly. When questioned by the Department, it may use whatever evidence it may obtain, including after-acquired section 2c certificates, to establish the nature of the sales. Once the wholesale sales have been separated out, then the burden is upon it to produce section 2c certificates acquired simultaneously with the sale to establish retail exemptions. Failing this, it is liable to the extent that it cannot so produce.

I would affirm the trial court.