CERRO WIRE AND CABLE CO., Plaintiff-Appellee, *v.* THE DEPART-
MENT OF REVENUE *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 81—949

Opinion filed December 30, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants.

Hubachek & Kelly, Ltd., of Chicago (Roger L. Longtin and John J. Pembroke, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This administrative review action was brought by Cerro Wire and Cable Company (Cerro) against the Illinois Department of Revenue and Robert M. Whitler, its director (hereinafter collectively referred to as the Department), to contest the Department's final assessment of $21,390.85 in taxes, penalties and interest due under the Retailers' Occupation Tax Act (the Act) (Ill. Rev. Stat. 1973 & 1975, ch. 120, pars. 440 to 453, hereinafter cited to Ill. Rev. Stat. 1975) and the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973 & 1975, ch. 24, par. 8—11—1) for the period January 1973 through December 1975. The circuit court reversed the Department's determination of tax liability. The Department appeals.

The issues presented by the parties on appeal are: whether the provisions of the Act apply to a portion of Cerro's sales; whether Cerro's noncompliance with section 2c of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 441c) transforms a portion of its wholesale sales transactions into retail sales transactions subject to taxation; whether section 2c of the Act violates the Illinois Constitutions of 1870 and 1970; and whether Cerro is entitled to a refund for use taxes collected by the Department when Cerro's products subsequently were resold.

The retailers' occupation tax is imposed upon persons engaged in the business of selling tangible personal property at retail. (Ill. Rev. Stat. 1975, ch. 120, par. 440.) A sale at retail is defined as "any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale ***." The Act further provides that the term "sale at retail" includes "any transfer of the ownership of or title to tangible personal property *** for resale in any form as tangible personal

property unless made in compliance with Section 2c of this Act." (Ill. Rev. Stat. 1975, ch. 120, par. 440.) Section 2c states that with certain exceptions:

> "no sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." Ill. Rev. Stat. 1975, ch. 120, par. 441c.

Cerro manufactures and sells wire and cable products at wholesale and retail. In 1977, the Department audited Cerro's books and records for the calendar years 1973, 1974 and 1975. During this period, Cerro paid retailers' occupation taxes in the amount of $3,033.67 based on retail sales of $75,841.75 and gross receipts of $4,907,714.47. Cerro and the Department signed an agreement authorizing the test check audit and specifying that the average monthly margin of error arrived at by the test check audit would be applied against the entire audit period. The audit was based on a test check of Cerro's sales records for the months of August 1973, October 1974 and April 1975. The auditor determined that Cerro improperly treated five sales, totaling $24,136.33, as wholesale sales. These sales were made to: Freeman Coal Mining ($718.13); Fife Florida Electric Supply Company ($1,834.96); and Nelson Electric Supply ($21,583.24). Although Cerro had claimed the sales were not subject to the retailers' occupation tax because they were sales for resale, the auditor rejected this argument because Cerro did not obtain the purchasers' registration or resale numbers as required by section 2c of the Act.

Cerro protested the assessed deficiency, and a hearing was held pursuant to section 4 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 443). At the hearing, Cerro presented statements signed by officials of Fife Florida Electric Supply Company and Nelson Electric Supply stating that the materials purchased during the questioned transactions were purchased for resale. The Department's hearing examiner rejected these statements and recommended issuance of the tax assessment because Cerro had not obtained resale numbers in compliance with section 2c of the Act.

In connection with the administrative review action in the circuit court of Cook County, Cerro submitted an opening memorandum which stated that neither Fife Florida Electric Supply Company nor Nelson Electric Supply had Illinois registration numbers; that Fife had mistakenly paid a 4% use tax to the State of Florida on its resale; and that a use tax had been paid to the Illinois Department of Reve-

nue by Northern Petrochemical, an Illinois corporation which purchased Cerro's products from Nelson. Cerro also admitted in this memorandum that the sale to Freeman Coal Mining was not a sale for resale so that Cerro was liable for the retail tax thereon.

Based upon the recently decided Illinois Supreme Court case of *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 413 N.E.2d 370, the circuit court reversed the Department's assessment and ordered the Department to repay to Cerro the amount of $21,390.85 plus interest from the date that amount had been paid. Specifically, the circuit court found that Cerro's customers were not purchasers as defined and contemplated by the Act and that, therefore, Cerro was not required to comply with section 2c of the Act.

In *Dearborn Wholesale Grocers, Inc. v. Whitler*, the court held that the Retailers' Occupation Tax Act did not apply to a seller of tangible personal property who was not engaged in the retail business. The taxpayer in that case had presented testimony that it made no sales at retail and that all of its sales, including those which were the subject of the assessment, had been made to retail grocery stores for the purpose of resale. On this basis, the court found that the taxpayer's customers were not purchasers since they had not acquired the tangible personal property through a sale at retail (Ill. Rev. Stat. 1979, ch. 120, par. 440) and thus the taxpayer was not subject to the Act or its reporting requirements.

In the instant case, Cerro relies on *Dearborn* and contends that it, too, is a wholesaler and that its disputed sales were in fact sales for resale and that those sales should not have been taxed as sales at retail merely because of a technical noncompliance with section 2c of the Act. The facts in the instant case are distinguishable, however, since Cerro, unlike Dearborn Wholesale Grocers, Inc., did engage in retail sales. Cerro admitted this fact in its pleadings and actually paid the retailers' occupation tax on sales totaling $75,841.75 during the tax years audited.

■ Furthermore, arguments similar to those made by Cerro were recently rejected in *Illinois Cereal Mills, Inc. v. Department of Revenue* (1982), 106 Ill. App. 3d 53, 435 N.E.2d 774, *appeal allowed* (1982), 91 Ill. 2d 569. In that case, the taxpayer sold its products almost entirely for resale but made a small amount of sales to ultimate consumers. The taxpayer had not complied with the documentation and verification requirements of section 2c of the Act but attempted to present other evidence that the disputed sales were for resale. This court held that section 2c applied to taxpayers who sell mainly for resale but who make some sales at retail and affirmed the Department's

tax assessment since the taxpayer had not complied with section 2c. For similar reasons, we hold that Cerro was required to comply with section 2c of the Act and that its failure to do so subjected it to the tax liability assessed by the Department.

As alternative support for the circuit court's reversal of the tax assessment, Cerro contends that section 2c and section 1's reference to section 2c are unconstitutional. Cerro argues that these sections violate article IV, section 13 of the 1870 Illinois Constitution (Ill. Const. 1870, art. IV, sec. 13), which limited the contents of an act to the subject expressed in its title. Cerro also argues that sections 1 and 2 of the Act violate article IX, section 2 of the 1970 Illinois Constitution (Ill. Const. 1970, art. IX, sec. 2) because the exemption created by the Act for sales for resale is unreasonable.

Since the applicable provisions of sections 1 and 2c of the Act were enacted in 1965 and 1967, they are subject to the limitations of article IV, section 13 of the 1870 Constitution. (*Dearborn Wholesale Grocers, Inc. v. Whitler*.) As stated in *Reif v. Barrett* (1933), 355 Ill. 104, 188 N.E. 889, the purpose of article IV, section 13 of the 1870 Illinois Constitution was:

> "to remedy the evil that was sometimes present in legislative enactments, of embracing more than one subject in the title, of the collation of divergent subjects of legislation having no interrelation, and of procuring the passage of the act as a whole when such legislation could not be passed if written in separate bills. The provisions of section 13 of the constitution are not intended to impede legislation but to protect the people against unwise legislation ***. However, it is not intended by this constitutional provision that the title of the act shall go into all the details of the proposed law, neither shall it be a table of its contents, but it is sufficient if the title correctly gives the subject matter of the act explicitly and clearly, so as to inform the members of the General Assembly and the public of the subject dealt with and matters inter-related with the subject, even though some of the provisions of the bill may be diverse, if such provisions go to make an effective and practical piece of legislation. [Citations.]" (355 Ill. 104, 124-25, 188 N.E. 889, 898; see also *People v. Tibbitts* (1973), 56 Ill. 2d 56, 305 N.E.2d 152.)

Illinois courts have uniformly given a liberal construction to the constitutional provisions of article IV, section 13 in favor of the validity of enactments. *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E. 113.

According to its title, the Retailers' Occupation Tax Act imposes a

tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption. The tax is imposed on the privilege of selling at retail which is defined in section 1 of the Act to include any transfer for resale unless made in compliance with section 2c. (Ill. Rev. Stat. 1975, ch. 120, par. 440.) Section 2c requires the imposition of the tax upon sales for resale unless the taxpayer obtains the purchaser's registration or resale number. Thus, it is true, as Cerro contends, that sales for resale can be taxed under the Act even though the purpose of the Act is to tax sales of products taken off the retail market (see *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E.2d 8).

■ We do not believe, however, that the resultant tax on sales for resale makes section 2c and section 1's reference thereto unconstitutional. The purpose of section 2c is to provide a means of verifying a claim made by a person subject to the Act as a retailer that a particular sale by him is exempt from taxation because the purchaser is not himself the ultimate user or consumer of the property. (*Dearborn Wholesale Grocers, Inc. v. Whitler*.) The stricter verification requirements of section 2c have been said to be justified for situations where a taxpayer engages in wholesale and retail sales because a sale erroneously may be claimed as a resale. (*Illinois Cereal Mills, Inc. v. Department of Revenue*.) Section 2c does not create a new tax on sales for resale; it merely denies an exemption from retail sales taxation where the seller has not proved by the required documentation that it is entitled to the exemption. Since the matters embraced in that section are germane and interrelated with the subject of the taxation of retail sales, we believe that section 2c and section 1's reference thereto do not expand the subject of the Act beyond the Act's title and, therefore, article IV, section 13 of the 1870 Illinois Constitution is not violated.

Cerro also contends that section 2c and section 1's reference thereto violated article IX, section 2 of the 1970 Illinois Constitution which provides in pertinent part: "Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Cerro argues that the sales for resale exemption created by sections 1 and 2c of the Act is unreasonable because the exemption is limited to those transactions where the purchasers' registration or resale numbers are supplied to the taxpayer. Cerro contends that the taxpayer should be able to qualify for the exemption by supplying proof based on any evidence that the sale was not a sale to a purchaser for use or consumption.

It generally has been stated that he who challenges the constitutionality of a legislative act has the burden of showing clearly wherein

such act violates constitutional limitations. (*Reif v. Barrett* (1933), 355 Ill. 104, 188 N.E. 889; see *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633.) Moreover, in determining whether a statutory exemption applies, all reasonable doubts are to be resolved in favor of taxation. (*Heller v. Fergus Ford, Inc.* (1975), 59 Ill. 2d 576, 322 N.E.2d 441.) Article IX, section 2 of the 1970 Illinois Constitution was created to permit the legislature to enact tax laws which would exempt taxation on food and other necessities. The Constitutional Convention chose to give the General Assembly flexibility in choosing appropriate exemption methods (Ill. Ann. Stat., 1970 Const., art. IX, sec. 2, Constitutional Commentary, at 157 (Smith-Hurd, 1971)), and the only limitation on the legislature's authority with regard to the creation of exemptions and other allowances was that they be reasonable (see *Thorpe v. Mahin; Winter v. Barrett* (retailers' occupation tax exemption to class of taxpayers who sold farm products or produce or motor fuel at retail was unreasonable)).

■ In the case at bar, the legislature enacted the Retailers' Occupation Tax Act to tax the business of selling at retail. Sections 1 and 2c of the Act exempt sales for resale to the extent that the statutory reporting requirements of section 2c are met. The burden is placed on the taxpayer who seeks the exemption to gather the purchaser's registration or resale number at the time the sale is made to ensure that the products purchased are in fact being purchased for resale. We believe that the reporting requirements specified in the Act are reasonable as to the enforcement of the taxing scheme and that the plaintiff has not met its burden in proving a violation of article IX, section 2 of the Illinois Constitution of 1970.

Cerro's final contention in this appeal is that in the event it is liable for the disputed retailers' occupation tax, it should be given a credit for the use tax that was paid when Cerro's products were subsequently sold at retail for use or consumption. Cerro states that Northern Petrochemical Company (Northern) purchased Cerro's products from Nelson Electric Supply and that Northern had paid a self-assessed use tax to the Illinois Department of Revenue.[1] Cerro relies on section 6 of the Retailers' Occupation Tax Act, which states:

"If a retailer who has failed to pay retailers' occupation tax on gross receipts from retail sales is required by the Depart-

---

[1] Cerro's argument is based on testimony presented by its accountant at the departmental hearing that Northern Petrochemical Company orally informed Cerro that "they self-assessed themselves on any taxable purchases that they might have." For purposes of discussion of this issue, we assume that the appropriate use taxes had been paid by Northern to the Department of Revenue.

ment to pay such tax, such retailer, without filing any formal claim with the Department, shall be allowed to take credit against such retailers' occupation tax liability to the extent, if any, to which such retailer has paid an amount equivalent to retailers' occupation tax or *has paid use tax in error to his vendor* or vendors of the same tangible personal property which such retailer bought for resale and did not first use before selling it, and no penalty or interest shall be charged to such retailer on the amount of such credit." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 445.

As stated above, the Retailers' Occupation Tax Act imposes a tax upon the occupation of retail selling within the State. The use tax, however, is a tax upon the privilege of using personal property within the State and is collected by the retailer from the purchaser at the time the sale is made. (Ill. Rev. Stat. 1975, ch. 120, par. 439.3.) The latter tax was enacted to complement the former by preventing the evasion of tax on interstate purchases and to protect Illinois retailers from the competitive advantage of out-of-State retailers who are not required to collect a sales tax from Illinois purchasers. (*Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 207 N.E.2d 425.) The legislature intended that one tax and only one tax should reach the State treasurer with regard to each purchase of property for use within the State and it accomplished this goal by relieving the retailer who has paid the retailers' occupation tax on the retail sale from collecting the use tax from the purchaser in the same retail sale. (Ill. Rev. Stat. 1975, ch. 120, par. 439.8.) Thus, a single retail sale gives rise to two tax obligations, but only one of the obligations must be paid to the Department of Revenue. *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 421 N.E.2d 1030.

The portion of section 6 of the Act relied upon by Cerro allows the retailer a credit for use taxes it paid to *its vendor* when it purchased personal property intending to use that property but later sold it at retail without having used it. That provision is not applicable in the instant case since Cerro is not contending that it paid a use tax on the products that it sold to Nelson Electric Supply. The use tax that assumedly was paid was incurred during the subsequent retail sales transaction between Nelson and Northern. If Nelson had been required to pay the retailers' occupation tax on this sale, Northern would have been exempt from paying the use tax under the exemption provisions of the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.8). However, the sales transaction between Nelson and Northern

was separate and distinct from the transaction between Cerro and Nelson; and payment of use taxes incurred by the latter transaction had no effect on Cerro's obligation to pay the retailers' occupation tax incurred as a result of the former transaction. (*Cf. Howard Worthington, Inc. v. Department of Revenue* (retailer not entitled to retailers' occupation tax credit for its payment of use taxes on equipment it used and subsequently sold since original purchase and use was distinct transaction from subsequent sale and use).) Thus, we believe Cerro is not entitled to a credit for the use taxes paid by Northern Petrochemical Company to the Illinois Department of Revenue.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

WHITE, P.J., and McNAMARA, J., concur.